**In re Stephen R. & Norma J. GREEN.**

**STATE OF MICHIGAN, Appellant–Plaintiff,**

v.

**Stephen R. & Norma J. GREEN and Joseph Chrystler, Appellee–Defendants.**

**File No. K87–200 CA4. Bankruptcy No. KH87–0354.**

United States District Court, W.D. Michigan.

Dec. 28, 1988.

Frank J. Kelley, Atty. Gen. by James D. Clarke and Richard R. Roesch, Asst. Attys. Gen., Revenue Div., Lansing, Mich., for appellant-plaintiff.

Robert J. Pleznac, Kalamazoo, Mich., for defendants, Stephen R. and Norma J. Green.

Joseph A. Chrystler, Kalamazoo, Mich., trustee.

The Nat. Legal Foundation by Paul S. McConnell, Virginia Beach, Va., amicus curiae.

### OPINION

ENSLEN, District Judge.

This case is before the Court on appeal from a decision and order of the bankruptcy court which confirmed—over the objections of the State of Michigan—a Chapter

13 plan filed by debtors Stephen R. Green and Norma J. Green 73 B.R. 893 (Bkrtcy. W.D.Mich.1987). On February 4, 1987, the debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. On the same date they also filed a Chapter 13 plan and budget.

Chapter 13 is open to individuals and married couples with less than $100,000.00 in unsecured debts and less than $350,-000.00 in secured indebtedness. Chapter 13 provides bankruptcy courts with the authority to supervise orderly repayment of a debtor's obligations over a period up to five years. If the bankruptcy court finds that the debtor does not have the means to fully repay his indebtedness during the plan period, it is authorized to grant a discharge of the remaining indebtedness once the debtor has paid all payments contemplated under the plan.

The Code requires the debtor to pay "all disposable income" into the plan during its term. "Disposable income" is defined in the Code as follows:

> For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C.A. § 1325(b)(2) (Supp.1988).

To aid the bankruptcy court in determining what is "disposable income,"[1] a debtor is required to file a budget form with the bankruptcy court which lists: a debtor's gross income from all sources and direct deductions from this gross income, debtor's net income, and debtor's estimated monthly expenses. The debtor's net income minus the monthly expenses figure equals the debtor's proposal as to "disposable income."

The case now before the Court involves the appellant State of Michigan's objection to the debtors' Chapter 13 plan as approved by the bankruptcy court. The State has filed a claim with the bankruptcy court, on behalf of the Michigan Department of Education, for the amount of $2,794.80, the amount of one debtor's default on a student loan. The State objects, in particular, to the debtors being allowed to support their church on a regular monthly basis as proposed in debtors' plan and budget.

The debtors originally proposed to pay all their creditors a total of $40.00 per month, out of a gross income of $25,000.00 per year. The bankruptcy court later increased the figure to $98.33 per month by disallowing a payment to an IRA. If the debtors pay $98.33 per month for three years, any debt remaining at the end of that time will be cancelled. In this case, 90 to 95% of the debt owed to the State will be cancelled and discharged at that time.

The bankruptcy court excluded $140.00 per month in tithes, from that which is available as disposable income under the Code. The State argues that the $140.00 per month contribution to a church is "not reasonably necessary to be expended for the maintenance and support of the debt-

---

1. The bankruptcy court must make a number of decisions here to determine disposable income:
   In addition to the task of projecting expenses, the disposable income definition also imposes upon the court the duty of deciding whether the debtor's expenses are 'reasonably necessary' for the maintenance or support of debtor or a dependent of the debtor.... [In making such a decision,] the Court cannot and should not order debtors to alter their lifestyles where there is no obvious indulgence in luxuries, even where one or more unsecured creditors demand such change. To engage in such

close judgments and supervision would be to contravene the intent of Congress. It would also place impossible burdens on the court in determining the absolute necessity of every expense in each debtor's budget. Since the views of judges on such value-laden issues differ significantly, such an interpretation of the amendments would contravene their purpose of restoring nationwide uniformity to Chapter 13.
5 *Collier on Bankruptcy* ¶ 1325, at 48–49. (15th Ed. 1988) (footnotes omitted).

or," therefore it should be part of disposable income and should be used as disposable income to pay off the plan.

The Court's jurisdiction in this matter is based upon 28 U.S.C. § 158(a) which provides for a district court's mandatory jurisdiction over appeals from final judgments, orders, and decrees of a bankruptcy judge in cases and proceedings referred to the bankruptcy judge under 28 U.S.C. § 157.

*Discussion*

In order to decide this appeal, the Court must examine one major issue stemming from the bankruptcy court's exclusion of $140.00 from the disposable income funds. The State argues that the bankruptcy court's determination that a tithe is excludable from "disposable income" is an impermissible violation of the Establishment Clause of the U.S. Constitution. The debtors and The National Legal Foundation as Amicus Curiae argue that there is no such constitutional violation.[2]

The First Amendment to the U.S. Constitution reads in relevant part:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....

U.S. Const. amend. I.

Although the words are simple enough, the Supreme Court has said that "the Establishment Clause presents especially difficult questions of interpretation and application." *Mueller v. Allen*, 463 U.S. 388, 393, 103 S.Ct. 3062, 3066, 77 L.Ed.2d 721 (1983). The Court suggested in many of these decisions it "can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." *Id.* Perhaps clearer are the goals of the Establishment Clause. In *Lemon v. Kurtzman*, the Court stated that:

> In the absence of precisely stated constitutional prohibitions, we must draw lines

with reference to the three main evils against which the Establishment Clause was intended to afford protection: sponsorship, financial support, and active involvement of the sovereign in religious activity.

403 U.S. 602, 613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (quoting *Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970)).

In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Court articulated a three part analysis to examine an alleged Establishment Clause violation, based upon "cumulative criteria developed by the Court over many years." *Id.* at 612, 91 S.Ct. at 2111. The Court described three characteristics of a law that is constitutionally-acceptable under the Establishment Clause:

> First, [the law] must have a secular legislative purpose;
>
> Second, its principal or primary effect must be one that neither advances nor inhibits religion ...; and
>
> Finally, the [law] must not foster 'an excessive entanglement with religion.'

*Id.* at 613, 91 S.Ct. at 2111 (citations omitted).

Certainly the Bankruptcy Code and the bankruptcy decision in this case have a secular purpose. The primary purpose of the Bankruptcy Act is "to secure for creditors everything of value that the bankrupt may possess in alienable or leviable form." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Congress also intended to "leave the bankrupt free after the date of his petition to accumulate new wealth in the future," and to encourage him to "make an unencumbered fresh start." *Segal*, 382 U.S. at 380,

---

**2.** The issue on appeal relates to the bankruptcy court's approval of a plan which arguably violates the Establishment Clause. The National Legal Foundation filed a thoughtful brief as Amicus Curiae, arguing that the Court's approval did not violate the Establishment Clause. It also argued that including the tithe in the debtors' disposable income would substantially burden the free exercise of debtors' religion. Although the Court does not agree, at least preliminarily, I need not reach this issue because of my decision on the Establishment Clause issue.

86 S.Ct. at 515. Presumably, the bankruptcy court sought to advance the underlying purposes of the Code when it approved the debtors' plan. Also, in making the "reasonably necessary" analysis when formulating expenses in the plan, the bankruptcy court is urged to maintain a debtor's lifestyle where there is no obvious indulgence in luxuries. *See supra* n. 1. All of these purposes are secular in nature, including the broad, well-accepted goal of the Bankruptcy Amendment to restore nationwide uniformity to Chapter 13 proceedings.

The second part of the *Lemon* test is also met by the facts before me. The primary effect of the law must neither advance nor inhibit religion. Here, the State argues that the bankruptcy court's interpretation of the Code results in support to a religious group over other religious and secular groups. There may be some indirect benefit to the debtors' church as a result of the bankruptcy plan, however, such an indirect benefit cannot be construed as bearing the weight of government approval toward any particular religion or toward religion in general. *Mueller v. Allen*, 463 U.S. 388, 399, 103 S.Ct. 3062, 3069, 77 L.Ed.2d 721 (1983). In addition, under *Grand Rapids School District v. Ball*, 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985), the plan is not "likely to be perceived by adherents of the controlling denomination[ ] as an endorsement, and by the nonadherents as disapproval, of their individual religious choices." *Id.* at 390, 105 S.Ct. at 3226.

Finally, the *Lemon* test requires that the government avoid excessive entanglement with religion; that is, "comprehensive, discriminating, and continuing State surveillance." 403 U.S. at 619, 91 S.Ct. at 2114.

In this case, governmental involvement is minimal. The State objects to court approval of a tithe payment which the debtors have made for a considerable time. There is no need here for government to become an active participant in the ongoing relationship between the debtors and their church.

In contrast, *Grand Rapids School District v. Ball*, 473 U.S. 373, 105 S.Ct. 3216 and *Bollenbach v. Monroe–Woodbury Central School Dist.*, 659 F.Supp. 1450 (S.D.N.Y.1987), illustrate excessive entanglement where significant government machinery is committed to granting a benefit to a religious group. In the *Grand Rapids* case, the Court struck down a shared time program between public and private schools which would have blended the personal and physical resources of public and parochial schools. In *Bollenbach*, the court held that deployment of only male school bus drivers for private Hasidic boys' schools violated the Establishment Clause.[3]

In the case before the Court, the bankruptcy court has merely deemed the church-related expenses to be a reasonable component in a budget and plan under Chapter 13. There is no direct governmental involvement, nor is there any application of governmental machinery. The religious expenses of the debtors are given co-equal status with the various secular expenses of their family such as newspapers, recreation, and life insurance. Other routinely approved expenses include cable t.v., home maintenance, child care, and private schooling.

In summary, the Court finds no violation of the Establishment Clause on the facts before me. The bankruptcy court's interpretation of the Code is consistent with the criteria articulated by the Supreme Court in *Lemon v. Kurtzman* and used by the Court in subsequent cases. Whether the tithe is viewed as religious practice, debt, or gift, the bankruptcy court did nothing to create an interpretation of law with a constitutionally impermissible purpose, effect, or relationship with the government.

### ORDER

In accordance with the opinion entered December 28, 1988;

---

**3.** A school district may, of course, provide transportation to nonpublic school systems without violating the Establishment Clause. *Everson v. Board of Educ.*, 330 U.S. 1 (1947).

IT IS HEREBY ORDERED that the bankruptcy court's decision and order is AFFIRMED.