In re Cecil S. LEES and Janice Lees, Debtors.

Bankruptcy No. 94–10523–13.

United States Bankruptcy Court, D. Montana.

Dec. 13, 1994.

Kelly J. Varnes, Hendrickson, Everson, Noennig & Woodward, P.C., Billings, Montana, for Debtors.

Robert S. Drummond, Chapter 13 Standing Trustee, Great Falls, Montana.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 13 case the Trustee objects to confirmation of the Debtors' Plan, contending the Debtors' tithing of $200 per month violates the "disposable income" requirement of 11 U.S.C. § 1325(b). The Debtors argue that their longstanding practice of tithing and their religious lifestyle support confirmation, urging application of *In re Navarro,* 83 B.R. 348 (Bankr.E.D.Pa. 1988). This Court agrees with the Trustee, adopts the majority rule, sustains the Trustee's objection, and denies confirmation.

1.  11 U.S.C. § 1325:
    **§ 1325. Confirmation of plan.**
    (b)(1) If the Trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
         \*    \*    \*    \*    \*    \*
    (B) the plan provides that all of the debtor's projected disposable income to be received

After due notice, a hearing on this matter was held at Billings on October 12, 1994. The Trustee and the Debtors appeared represented by counsel. Debtor Cecil S. Lees (Cecil) testified. No exhibits were admitted into evidence. At the close of the hearing this Court took the matter under submission, and granted the parties time in which to file memoranda of law. Those having since been filed and reviewed by the Court, this matter is ready for decision.

At issue is whether the Debtors' Plan satisfies the disposable income requirement for confirmation of § 1325(b)(1)(B) and 1325(b)(2) [1], when the Plan proposes to pay $150 per month toward unsecured creditors while the Debtors propose to tithe $200 per month to their church.

The Debtors filed a voluntary Chapter 13 petition on April 11, 1994, and filed their Statements and Schedules shortly thereafter. Debtors list no real property, and almost all of their personal property except $500 worth of diesel mechanic tools are claimed under various exemptions. Debtors list a total of $31,854.34 in general unsecured claims, mostly related to medical expenses.

Cecil Lees is employed as a diesel mechanic and earns $12 per hour. Janice Lees is disabled and receives $623 in government assistance. They have two dependents. The Debtors' expenses total $2,022.58. Their expenses include nothing for recreation, clubs and entertainment, newspapers, magazines, etc. Cecil testified that their only entertainment is derived from their attendance at the Shepherd of the Valley Church. The Debtors' expenses include a $200 per month tithe to their church.

Debtors' income exceeds their expenses by $156.54 per month. On April 28, 1994, the Debtors filed a Chapter 13 Plan which pro-

in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended.

poses to pay the Trustee $150 per month for sixty (60) months. The Trustee filed an objection based upon § 1325(b), contending the $200 tithe is disposable income not reasonably necessary to be expended for the maintenance or support of the Debtors or their dependents.

Debtors, noting a split of authority on the issue of whether tithing is disposable income, argue that this Court should adopt the minority rule set forth at *In re Navarro*, 83 B.R. 348 (Bankr.E.D.Pa.1988). There, the court noted § 1325(b) did not violate debtors' First Amendment rights, but nonetheless confirmed a Chapter 13 plan over a creditor's § 1325(b) objection based upon the debtors' tithing and religious education expense. *Id.*, 83 B.R. at 353, 357.

The court in *Navarro* admitted that it did not agree with the court's conclusion in *In re Green*, 73 B.R. 893 (Bankr.W.D.Mich.1987), that denying confirmation because of a debtor's tithe by application of § 1325(b) would unconstitutionally burden a debtor's free exercise of religion under the First Amendment. *Navarro*, 83 B.R. at 352–53. Then, the court proceeded to hold that confirmation of a plan which does not pay unsecured creditors in full while continuing to tithe does not violate the creditors' rights under the establishment clause. *Id.*

Turning to the merits of § 1325(b) after disposing of the constitutional issues, the court in *Navarro* noted a principle "implicitly recognized" by the Judicial Conference of the United States, to the effect that some level of religious or charitable contribution may be consistent with expenditures reasonable necessary for maintenance and support of Chapter 13 debtors. *Id.* at 356.[2] Based upon such authority, and noting the Navarros' sincerely held religious beliefs, the small $120 monthly tithe, their long-standing practice of tithing, their determination to continue to tithe even if it meant the failure of their bankruptcy, and their austere lifestyle, the court in *Navarro* overruled the creditor's

objection to confirmation based upon § 1325(b). *Id.* at 357.

The instant Debtors share many of the values of the Navarros. Their $200 monthly tithe is a long-standing religious belief personal to the Debtors. Cecil has tithed one-tenth of earnings for thirty years, based upon scripture. There is no suggestion that the Lees family began tithing in contemplation of bankruptcy. The Debtors' Schedule J, which shows the $200 monthly tithe, lists $0 for recreation and entertainment. Cecil testified that the Debtors' only recreation revolves around the Shepherd of the Valley Church, to which they tithe.

The record does not show, however, that the Shepherd of the Valley Church requires a tithe of ten percent from its members. Furthermore, there is no indication that the Debtors could no longer attend or would otherwise lose any privileges at the Shepherd of the Valley Church, or some other church of the same denomination, were they to reduce or eliminate their tithe altogether. The only evidence is Cecil's testimony that the obligation to tithe is from the scriptures and thirty years of Cecil's practice. Other courts recognize the difficulty in deciding whether an individual has "a bona fide personal commitment" to a religious organization, when deciding whether religious contributions are based upon beliefs sincere enough to deem the tithe outside of § 1325(b)'s "disposable income" net. *In re Packham*, 126 B.R. 603, 610 (Bankr. D. Utah 1991). "Such decisions are not for courts to make." *Id.*

The majority rule holds that tithing should not be considered a reasonable living expense. *Packham*, 126 B.R. at 610. The Honorable Alfred C. Hagan recently summarized the current state of the law as follows:

The majority of courts that have considered the matter have held that charitable donations are not reasonably necessary for maintenance and support. However, a few courts have confirmed Chapter 13 plans despite the inclusion of charitable dona-

---

**2.** The court recognized that the official bankruptcy forms and schedules, and their inclusion of certain entries from which the court credits the Judicial Conference with the "implicit recognition" that some level of religious or charitable

contribution may be consistent with expenditures reasonably necessary for a debtor's maintenance and support, do not have the force of substantive law. *Navarro*, 83 B.R. at 356.

tions as a budgeted item. For example in *In re Green*, 73 B.R. 893 (Bankr.W.D.Mich. 1987), the court held that denying confirmation of a Chapter 13 plan based solely on the debtors declared intention to make a tithing to his church would be a violation of the First Amendment. However, the court's analysis in *In re Green*, has been seriously undermined by *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) in which the Supreme Court held:

> [I]f prohibiting the free exercise of religion ... is not the object of the [law] but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended. *In re Lynn*, 168 B.R. 693, 697 (Bankr.D.Ariz.1994) (quoting, *Employment Div. v. Smith*, 494 U.S. at 878, 110 S.Ct. at 1599–1600). Three bankruptcy courts have held that *Smith* stands for the proposition that the Bankruptcy Code need not yield to a debtor's desire to tithe. *See In re Young*, 152 B.R. 939, 951 (Bankr.D.Minn.1993) (holding that donations to churches could be considered preferences and or fraudulent transfers); *In re Lee*, 162 B.R. 31, 42 (Bankr.N.D.Ga.1993) (amount a debtor tithes can be considered in a section 707(b) motion to dismiss); *In re Lynn*, 168 B.R. 693, 700 (Bankr.D.Ariz.1994) (the amount a debtor is able to tithe may be considered in a section 523(a)(8)(B) action to discharge student loan debt). Therefore, as long as section 1325(b) is applied neutrally to church and charitable donations it does not violate the First Amendment.

*In re Cavanaugh*, 175 B.R. 369, 374 (Bankr. D. Idaho 1994).

I agree that the Supreme Court's decision in *Smith* undermines the basis on which such decisions as *Green* and *In re McDaniel*, 126 B.R. 782 (Bankr. D. Minn. 1991) (cited by the Debtors in support of their argument), relied in permitting debtors to tithe notwithstanding bankruptcy. *See, In re Lynn*, 168 B.R. at 699 n. 9. (noting the Supreme Court limited its holding in *Hobbie v. Unemployment Appeals Comm'n of Florida*, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), upon which the courts in *Green* and *McDaniel* relied, to its facts in *Smith*, 494 U.S. at 882–83, 110 S.Ct. at 1601–03.)

As noted above, the court in *Navarro* admitted that *Hobbie* did not render denial of confirmation of a Chapter 13 plan, because of a debtor's tithing, unconstitutional. 83 B.R. at 353. The court further admitted that it finds § 1325(b) serves a compelling government interest, i.e., "administration of the bankruptcy system and protection of the legitimate interests of creditors." *Id.* Nevertheless, the court allowed the religious contributions based upon an "implicitly recognized" principle from official bankruptcy forms, that some level of religious contribution may be consistent with expenditures reasonably necessary for maintenance and support of Chapter 13 debtors. *Id.* at 356.

■ I disagree and conclude that *Navarro* has no remaining leg to stand on in light of *Smith*. Official forms are not authority on the question of whether tithing is reasonably necessary for the support of the Debtors or their dependents. *Navarro*, 83 B.R. at 356; *Packham*, 126 B.R. at 610–11. I adopt the majority position that tithing should not be considered a reasonable living expense. *Packham*, 126 B.R. at 610; *Lynn*, 168 B.R. at 699; *Cavanaugh*, 175 B.R. at 373–74.

■ Further, I follow *Packham*'s reasoning and decline to set a percentage which can be deemed a "reasonable charitable contribution." The purpose of § 1325(b) is to provide the maximum recovery to creditors by means of a substantial effort by the debtor to pay all debts, which may require some sacrifice. *Packham*, 126 B.R. at 610; *Lynn*, 168 B.R. at 699. "The integrity and creditability of Chapter 13 reorganizations would be substantially diminished if a debtor could budget charitable donations to an organization of its choice, thereby forcing its creditors to make de facto contributions to that organization." *Id.* (citing cases).

I note that Judge Hagan would allow debtors to make charitable donations out of their discretionary income for recreational spend-

ing. *Cavanaugh,* 175 B.R. at 374–75. Even that, however, is limited: "[b]y the same token the debtors have no right to more discretionary income then [sic] other debtors merely because they wish to use some of it to make charitable donations." *Id.*[3]

 The Trustee points out that the Debtors' $200 tithe exceeds the $150 amount they propose to pay creditors each month under the plan. In my view such a disposition of income fails to satisfy the "substantial effort" and "sacrifice" required under § 1325(b). The Debtors failed to show that their tithe is required for admittance to their church. *Packham,* 126 B.R. at 608. I conclude, therefore, they failed to meet their burden of proof under § 1325(b) that their tithe is reasonably necessary to be expended for their or their dependents' maintenance or support. Confirmation of the proposed Chapter 13 Plan must therefore be denied, and the Court will not engage in speculation as to what amount of tithing characterized as discretionary income or recreation would be allowed under some other plan which has not been filed.

■ The Debtors insist that the unsecured creditors would receive nothing if this case is dismissed or converted to Chapter 7. That circumstance does not render § 1325(b) inoperative. "Debtors wishing to continue to tithe after the filing of a bankruptcy petition are better suited for relief under Chapter 7." *Packham,* 126 B.R. at 610.

IT IS ORDERED the Chapter 13 Trustee's objection to confirmation is sustained; confirmation of the Debtors' Chapter 13 Plan, filed April 28, 1994, is denied; the Debtors are granted until on or before December 23, 1994, in which to file an amended Chapter 13 Plan in accordance with the above Order, or in which to file a motion to convert this case to a case under Chapter 7; and if the Debtors fail to timely file an amended Plan or motion to convert in accordance with this Order, this Court may enter an Order dismissing this case without further notice or hearing.

---

**3.** Notwithstanding that language allowing in theory charitable contributions out of discretionary income, the court denied confirmation of the debtors' plan because it could not determine whether their amounts for discretionary spending were reasonable. 175 B.R. at 374–75.