In re Antonio C. ANDRADE and
Heidi Andrade, Debtors.

Bankruptcy No. 97–22762–A–13.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Oct. 10, 1997.

Neil Enmark, Sacramento, CA, for Chapter 13 Trustee Lawrence J. Loheit.

W. Scott de Bie, Sheri L. Carello, Law offices of W. Scott de Bie, Sacramento, CA, for Debtors Antonio Andrade and Heidi Andrade.

1. Unless otherwise indicated, all "Chapter," "Code," "Section" and "Rule" references are to the provisions of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

2. Neither Debtors nor the Trustee have offered a definition of tithing for the court to employ. For purposes of this opinion, we define tithing to mean the practice by religiously motivated indi-

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Chief Judge.

The Chapter 13 Trustee ("Trustee") has filed a "Notice of Intent to Deny Confirmation and Dismiss Case" seeking to deny confirmation of Antonio Andrade and Heidi Andrade's ("Debtors") proposed Chapter 13 plan and dismiss the case.[1] The Trustee asserts that Debtors have not allocated all of their disposable income to the plan. Debtors oppose the motion to deny confirmation. After a hearing, the matter was taken under submission. For the reasons set forth below, the court will deny confirmation of the plan as proposed but allow Debtors to submit an amended plan.

## FACTUAL BACKGROUND

Debtors are husband and wife who filed a Chapter 13 petition in February 1997. With the petition, Debtors filed a plan in which they proposed to pay $492.00 per month for forty (40) months. Debtors' Schedule I indicates that they have a combined gross monthly income of $3,920.00 and a net monthly income of $3,340.00.

Debtors' Schedule J lists $2,848.00 in monthly expenses, leaving a net of $492.00 as Debtors' monthly disposable income. Among those expenses are $470.00 for charitable contributions; $100.00 for recreation, clubs, entertainment, and other miscellaneous expenses; $300.00 for electricity and heating fuel expenses; and $180.00 for clothing, laundry and dry cleaning expenses. The parties agree that under the proposed plan Debtors would pay the unsecured creditors approximately 29 percent of their claims.

Regarding the $470.00 per month charitable contribution, Debtors state that this amount represents $420.00 in tithing[2] to their

viduals of regularly giving a certain portion of their income to a church or religious organization. The terms "tithing," "tithe," and "tithed" are used synonymously in this opinion. For a general discussion of tithing and its religious significance to both Judeo–Christian and non-Christian faiths, see Note, *Tithing in Chapter 13—A Divine Creditor Exception to Section 1325,* 110 Harv.L.Rev. 1125, 1125–26 (1997), and Aric D. Martin, Comment, *Chapter 13 and the Tithe:*

church and $50.00 for their grandson's tuition. Debtors indicate that the amount being tithed is 10 percent of their gross income. Debtors have been members of and giving tithes to the River City Apostolic Church for approximately three years. Debtors believe it is a commandment of God that they tithe to their church.

The Trustee has not alleged that Debtors' religious belief in the necessity to tithe is insincere or asserted in an effort to hinder, delay, or defraud creditors. The Trustee also does not contend that the amount being tithed is not required by Debtors' church.

## DISCUSSION

The Trustee objects to confirmation of Debtors' Chapter 13 plan claiming that it fails the "best efforts test". This test requires that all of the Debtors' projected disposable income must be allocated to the proposed plan. *See In re Heath,* 182 B.R. 557 (9th Cir. BAP 1995). The Trustee contends that by allocating $470.00 per month for charitable contributions, Debtors are not proposing to contribute all their disposable income into the plan as required by 11 U.S.C. § 1325(b).

In contrast, Debtors contend in effect that religious tithing is per se reasonable and necessary because of their deeply held religious beliefs. They allege that denying their tithing would be an unconstitutional infringement of their free exercise of religion. In the alternative, Debtors claim that $420.00 per month is reasonable under the circumstances because it is approximately 10 percent of their gross income.[3] Finally, Debtors claim a right to tithe under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.,* notwithstanding the requirements of 11 U.S.C. § 1325(b).

Section 1325(b) provides that when the Trustee or an unsecured creditor objects to confirmation, Chapter 13 plans can not be confirmed unless the debtors propose to pay into the plan all of their disposable income for at least three years. 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined in relevant part as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor." 11 U.S.C. § 1325(b)(2)(A) (emphasis added). Thus, confirmation of a Chapter 13 plan often turns on whether the court approves of the debtor's list of "reasonably necessary" expenses. Neither the text of § 1325(b) nor its legislative history specifies what types of expenses the courts should treat as "reasonably necessary." *In re Jones,* 55 B.R. 462, 465 (Bankr. D.Minn.1985).

The lack of an expressed definition for "reasonably necessary" places the courts in the difficult position of having to pass judgment on a debtor's lifestyle. *In re Sutliff,* 79 B.R. 151, 156 (Bankr.N.D.N.Y.1987). Needless to say, no bright line test exists for determining whether a debtor's expenses are reasonably necessary for their maintenance and support. *In re Gillead,* 171 B.R. 886, 890 (Bankr.E.D.Cal.1994). One court put the problem in perspective by noting that at one extreme the purchase of a yacht or personal jet is clearly excessive, while at the other, no one could deny that food and shelter are reasonable and necessary. However, the real problem "lies in the vast gray area between these two extremes." *In re Gonzales,* 157 B.R. 604, 607 (Bankr.E.D.Mich. 1993).

In *In re Jones,* 55 B.R. 462, the bankruptcy court adopted a standard for "reasonably necessary" that has gained a following. *See In re Navarro,* 83 B.R. 348, 354–55 (Bankr.E.D.Pa.1988) (adopting principles articulated in *Jones* ). The *Jones* court held that under the reasonably necessary standard "the appropriate amount to be set aside for the debtor ought to be sufficient to sus-

---

*Is God a Creditor?,* 56 Ohio St. L.J. 307, n. 6 (1995).

**3.** Many Judeo–Christian religious denominations suggest 10 percent of gross income as the amount of tithe to be given by their congregation. *See In re Packham,* 126 B.R. 603, 604 n. 2

(Bankr.D.Utah 1991) (noting Black's Law Dictionary defines tithing as giving one-tenth of income to charity). We note that in actuality 10 percent of Debtors' gross income would be $392.00 per month.

tain basic needs not related to [the debtor's] former status in society or the lifestyle to which he is accustomed." 55 B.R. at 466 (quoting *In re Taff*, 10 B.R. 101 (Bankr. D.Conn.1981)).

 In *In re Gillead*, this court adopted the *Jones* standard with some clarifications. 171 B.R. at 890. First, the reasonably necessary standard is to be determined on a case by case basis. *Id.* Second, the standard must be flexible to permit debtors some discretionary spending. *Id.; see also In re Cavanaugh*, 175 B.R. 369, 374 (Bankr.D.Idaho 1994) (Chapter 13 debtors entitled to some discretionary spending); *In re Gonzales*, 157 B.R. at 608 (some discretionary spending necessary for maintenance and support). While some discretionary spending is permitted, the amount claimed must be subject to a reasonableness determination. *In re Gillead*, 171 B.R. at 890; *see also In re Anderson*, 143 B.R. 719, 721 (Bankr.D.Neb. 1992). This court further holds that the reasonableness of a debtor's permitted discretionary spending must be determined from the totality of the debtor's individual circumstances.

 With regards to religious contributions, the bankruptcy courts have struggled with the difficult question of whether tithing is a "reasonably necessary" expense for religious debtors seeking Chapter 13 relief.[4] The courts addressing this question have reached varying conclusions. One line of cases has held that tithing is protected First Amendment activity and should be granted particular protection. *See, e.g., In re Bien*, 95 B.R. 281, 282–83 (Bankr.D.Conn.1989); *In re Green*, 73 B.R. 893, 895–96 (Bankr. W.D.Mich.1987), *aff'd*, 103 B.R. 852 (W.D.Mich.1988). For example, in *Bien* the court held that religious tithes must be treated differently and are not a proper subject for judicial scrutiny, although secular charitable contributions are. 95 B.R. at 282–83. In *Green*, the court held that denying a debtor the right to tithe would violate the Free Exercise Clause. 73 B.R. at 895. The *Green* court found that forcing debtors to choose between bankruptcy protection or tithing to their church would place impermissible pressure on debtors to violate their beliefs, thus burdening their free exercise of religion. *Id.* at 895–96.

However this line of cases is the minority view and has been criticized. *See In re Cavanaugh*, 175 B.R. at 374 (rejecting analysis of *In re Green*); *In re Navarro*, 83 B.R. at 353 (same); David W. Case, Comment, *Resolving the Conflict Between Chapter 13 of the Bankruptcy Code and the Free Exercise Clause—In re Green: A Step in the Wrong Direction*, 57 Miss. L.J. 163 (1987) (criticizing view that Free Exercise Clause requires permitting religious tithes). *Bien* and *Green* are unpersuasive. Under their analysis, any allocation of income by debtors that furthers their First Amendment rights could not be considered disposable income available to creditors. For example, denying a charitable contribution to a political cause would be impermissible because it infringes freedom of speech. *See Buckley v. Valeo*, 424 U.S. 1, 19, 96 S.Ct. 612, 629, 46 L.Ed.2d 659 (1976) (money contribution to political candidates a form of protected speech). Many other examples can be imagined where Chapter 13 debtors decide to allocate money to various political or social causes claiming that the bankruptcy court can not infringe on their First Amendment rights by deeming the money to be disposable income for purposes of § 1325(b). This court thus refuses to adopt a blanket rule that all religious tithes are per se reasonably necessary.

 Moreover, this court agrees with those numerous cases stating that the validity of *In re Green* is questionable given the Supreme Court's subsequent decision in *Em-*

---

4. As one commentator has astutely noted:

"Bankruptcy courts [] face a difficult, policy-ridden choice. If they refuse to recognize tithing as a necessary expense, they make it impossible for some debtors to comply with their religious convictions while receiving the benefit of bankruptcy relief, and thereby implicate free exercise concerns. And yet, if courts treat religious charity as 'necessary,' they effectively permit tithing debtors to require that their creditors finance religious motivated charity, and thereby raise concerns under the Establishment Clause."

*Tithing in Chapter 13—A Divine Creditor Exception to Section 1325?*, 110 Harv.L.Rev. at 1128–29.

*ployment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). *See In re Cavanaugh,* 175 B.R. at 374; *In re Lees,* 192 B.R. 756, 759 (Bankr.D.Mont.1994); *In re Faulkner,* 165 B.R. 644, 647 (Bankr. W.D.Mo.1994). In *Smith,* the Supreme Court held that "if prohibiting the free exercise of religion ... is not the object of the [law] but merely an incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." 494 U.S. at 878, 110 S.Ct. at 1599–1600. This court concludes that § 1325(b)'s requirement that debtors allocate all disposable income to the Chapter 13 plan is a facially neutral law of general application and that any incidental interference by its application on Debtors' religious beliefs does not violate the Free Exercise Clause.

■ A second line of cases has held that charitable contributions are never reasonably necessary living expenses within the meaning of § 1325(b). *See, e.g., In re Packham,* 126 B.R. 603, 608 (Bankr.D.Utah 1991) (citing cases); *In re Lees,* 192 B.R. at 758–59; *In re Tessier,* 190 B.R. 396, 403 (Bankr.D.Mont. 1995); *In re Miles,* 96 B.R. 348, 350 (Bankr. N.D.Fla.1989). Under this analysis, all tithing is to be disallowed. *Id.* This is the majority view. *See In re Lees,* 192 B.R. at 758–59.

However, prohibiting all charitable spending in Chapter 13 is too harsh a result. *See In re Navarro,* 83 B.R. at 356 (tithing and education expense not per se unreasonable for maintenance and support of a family). This approach ignores the line of cases which hold that some contributions to charity can be permitted in a Chapter 13 plan. *See In re Faulkner,* 165 B.R. at 647; *In re Anderson,* 143 B.R. at 721. This approach also fails to take into account the fact that debtors do enjoy a certain amount of discretionary spending in Chapter 13. *In re Gillead,* 171 B.R. at 890; *In re Greer,* 60 B.R. 547.

A third approach would be to conclude that a reasonable tithing is permitted under limited proper circumstances. *See, e.g., In re Cavanaugh,* 175 B.R. at 374; *see also In re Reynolds,* 83 B.R. 684, 685 (Bankr.W.D.Mo. 1988); *In re Faulkner,* 165 B.R. at 647. This school of thought holds that tithing should be evaluated in the same manner as any other charitable contribution. A request to make a charitable contribution, whether secular or sectarian, should be evaluated under the individual circumstances of the case. After examining the totality of circumstances, the contribution should be permitted in whole, permitted in part, or denied in whole. Debtors here admit that the amount to be tithed should be evaluated under the circumstances of each case. This third approach is also consistent with this court's prior *Gillead* decision.

We adopt the position that some reasonable charitable contribution, whether to a secular or sectarian cause, is permitted from the "reasonably necessary" discretionary spending occasionally permitted a debtor. *In re Cavanaugh,* 175 B.R. at 374–75. However, the amount of total discretionary spending—for charity and other items—must also be reasonable. *See In re Gillead,* 171 B.R. at 890.

■ This approach is advantageous in that the court need not substitute its own judgment regarding the relative value of religious contribution and education. Nor does the Court need to gauge the sincerity of the debtor's perception of the need to tithe. *See In re Navarro,* 83 B.R. at 357 (employing analysis which considered the debtor's sincerity regarding their need to tithe).[5] Also the court need not examine a religion's tenets to determine whether tithing is in fact required in order to live in accordance with the

---

**5.** In finding a tithing reasonably necessary, the *Navarro* court rested its decision largely upon the fact that the debtors had an extremely sincere belief that tithing was absolutely necessary according to their religious beliefs. 83 B.R. at 355–57; *see also In re Packham,* 126 B.R. at 609 (noting *Navarro* relied on sincerity of debtors' religious beliefs); *In re Lees,* 192 B.R. at 758 (rejecting any reliance on the sincerity of the

debtors' belief in determining permissibility of tithe). To the extent *Navarro* considered the subjective belief of the debtor, we reject that portion of the opinion. The court must examine the totality of circumstances objectively, otherwise it would be forced to permit tithing whenever debtors have a sincere belief in their need to do so.

faith.[6] *See e.g., In re Tessier*, 190 B.R. at 403; *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."). These are not tasks that the courts are equipped to perform. *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981) ("Courts are not arbiters of scriptural interpretation").

■ When a court does approve some discretionary spending as a reasonably necessary expense, debtors are free to spend that amount of income on recreation, vacation, charity, or anything else they choose. The courts should thus confirm tithing as a necessary expense, but only by virtue of the debtors' willingness to pay for it with their discretionary funds—not by virtue of its charitable or religious nature.

■ Furthermore, under this approach debtors have no right to "more discretionary income than other debtors merely because they wish to use some of it to make charitable [or religious] donations. [T]he debtors' expenses for charitable donations will be considered with their other discretionary funds when determining the reasonableness of charitable contributions." *In re Cavanaugh*, 175 B.R. at 374–74. Again, the reasonableness of allowing all or part of the discretionary spending, even if spent on charitable contributions, will be based upon the totality of the debtor's circumstances. *In re Reynolds*, 83 B.R. at 685. This is an inherently fact-based analysis.

■ Under the totality of circumstances in this case, Debtors' proposed $470.00 monthly charitable contribution does not con-

stitute a reasonably necessary living expense. Several factors weigh against confirmation of the plan. First, the amount of the contribution is simply too high. *In re McDaniel*, 126 B.R. 782 (Bankr.D.Minn.1991). The $470.00 the Debtors allocate to charitable contributions is nearly equal to the $492.00 allocated to plan payments. In *McDaniel*, the court also denied confirmation of a Chapter 13 plan that proposed to pay a tithe nearly equal to the amount being paid creditors.

■ Second, Debtors have not undertaken enough sacrifice. As we highlighted in *Gillead*, filing for bankruptcy necessitates a certain degree of sacrifice by debtors. Chapter 13 debtors can not continue in the same lifestyle if it means unsecured creditors get less than 100 percent under the plan. Here Debtors' overall living expenses are also too high. In their Schedule J, Debtors allocate $100.00 per month for "[r]ecreation, clubs, and entertainment, newspaper, magazines, etc." It is not unreasonable for certain debtors to allocate some money for such expenses. For example, debtors with small children can reasonably allocate entertainment money for the benefit of the children. Here, however, Debtors allocate money for both charitable contributions and entertainment. In reality this means Debtors have allocated $570.00 ($470.00 for charity and $100.00 for entertainment) towards discretionary spending. *In re Gonzales*, 157 B.R. at 608–09 (courts may aggregate individual expenditures into discretionary spending). This is more than the $492.00 allotted for creditors. This $570.00 also represents 20 percent of the $2,848.00 monthly expenses; this is simply too much discretionary spending.

Furthermore, Debtors offer the court no explanation whatsoever as to why they provide tuition for their grandson.[7] Their

---

6. Nor need the court examine the equally vexing moral question of whether paying one's debts is a competing component of a particular faith or religious belief. *See e.g.*, Daniel Keating, *Bankruptcy, Tithing, and the Pocket–Picking Paradigm of Free Exercise*, 96 U.Ill.L.Rev. 1041, 1054–57 (1996) (examining the Biblical basis for tithing, but arguing that the Bible also condemns the failure to repay one's debts as a significant sin).

7. Debtors have failed to set forth any facts as to why the $50.00 tuition payment for their grandson is reasonable or necessary. We do not know anything about the age of the grandson, how long Debtors have been providing this tuition, whether the grandson is a dependant of Debtors, or whether the tuition is for secular or sectarian instruction. It is the responsibility of the parties to present sufficient facts for the court to make an informed determination regarding the issues

**772**

grandson is not listed as a dependent on the schedules. Also, Debtors' allocation of $300.00 per month for electricity and heating fuel and $180.00 per month for clothing and laundry expenses seem quite high. *See In re Jones,* 55 B.R. at 466–67 (court may examine debtors' entire budget to reduce excessive educational and living expenses). In comparison, the debtors in *In re Tessier* who were denied the right to tithe $100.00 per month had allocated only $200.00 per month for food and nothing whatsoever for entertainment or recreation. 190 B.R. at 399. The *Tessier* debtors also had no telephone or electrical utility service, nor did they carry health or life insurance. *Id.* Similarly, in *In re Lees,* the debtors' budget had "nothing for recreation, clubs and entertainment, newspapers, magazines etc." 192 B.R. at 757. The only form of entertainment the debtors had was attending their church. *Id.* In *Lees,* the court disallowed a $200.00 per month tithe. While such severe austerity is not necessarily required here, these two cases do highlight the unreasonableness of Debtors' wish to be permitted discretionary spending in the amount requested.

However, several factors point to allowing Debtors some discretionary spending. First, Debtors propose to pay for a period in excess of the 36 months minimally required by Chapter 13. Debtors' proposal to make plan payments for 40 months is commendable, but this length of time is insufficient to warrant allowing Debtors to donate $470.00 per month to charity. Generally, the longer the Chapter 13 plan a debtor proposes, the larger the amount of discretionary spending the court is willing to permit. For example, if a debtor proposed a 60–month plan, the amount of discretionary spending permitted would be greater than for a 36 month plan. However, this court will not engage in speculation as to what amount of tithing or tuition expense characterized as discretionary income would be allowed under some other plan which has not been filed. *See In re Lees,* 192 B.R. at 760. Second, Debtors have apparently tithed dur-

ing the whole time that they have been members of their church. Thus the tithing does not seem intended to divert money away from creditors.

Debtors further contend that if this court denies the proposed plan, they could seek relief under Chapter 7, whereby unsecured creditors would allegedly receive substantially less than the 29 percent recovery currently allotted under the plan. However, this consideration is not relevant. Debtors' option to choose Chapter 7 over Chapter 13 does not invalidate § 1325(b)'s requirement that all disposable income go to the plan. *See In re Lees,* 192 B.R. at 760. It is a debtor's prerogative to choose which chapter of the Code under which to proceed. However, it should be noted that if a Chapter 7 debtor could sufficiently fund a Chapter 13 plan by diverting funds earmarked for charitable purposes to the creditors, a court could dismiss the Chapter 7 case for substantial abuse under § 707(b). *In re Tessier,* 190 B.R. at 404 (citing *In re Lee,* 162 B.R. 31, 42 (Bankr.N.D.Ga.1993) (amount debtor tithes can be considered in a § 707(b) motion to dismiss)); *see also In re Faulkner,* 165 B.R. at 648 (finding § 707(b) substantial abuse because of excessive tithing). Therefore, Chapter 7 may not provide refuge for debtors wishing to exercise their religion through charitable contribution to their church. *In re Tessier,* 190 B.R. at 404–05.

Lastly, Debtors contend that the Religious Freedom Restoration Act precludes this court from interfering with Debtors' tithing. However, the Act was recently declared unconstitutional by the Supreme Court in *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Obviously, Debtors may not rely upon the Act now.

**CONCLUSION**

For the foregoing reasons, the Trustee's motion to deny confirmation is GRANTED. The Trustee's request to dismiss the case is DENIED. Debtors shall be permitted to file an amended Chapter 13 plan. This Memorandum shall constitute the Court's findings

---

in the case. Ultimately, these additional factors prove to be irrelevant to our analysis and decision as the court would deny this $50.00 expense

given the totality of circumstances here no matter what explanations Debtors might offer.

of fact and conclusions of law. An appropriate order shall issue.