**In re John Thomas STANLEY, Debtor.**

**No. 01–35513–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 18, 2002.

---

404

James E. Kane, Richmond, VA, for Debtor.

Robert E. Hyman, Richmond, VA, trustee.

### *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held on December 19, 2001, on Chapter 13 trustee's and Virginia Heartland Bank's objections to chapter 13 plan. The court took the matters under advisement, asking counsel for Virginia Heartland to submit proposed findings of fact and conclusions of law and allowing counsel for debtor to respond. The trustee deferred to counsel for Virginia Heartland.

For reasons stated below, the court will sustain the objections and deny confirmation.

### *Findings of Fact.*

Debtor was a shareholder, officer and director of R & S Auto Parts, Inc.,[1] along

1. R & S filed a no asset chapter 7 bankruptcy, case number 01–35236,–T on August 28,

with his son, John B. Stanley. Virginia Heartland holds an unsecured claim against debtor for $27,011.83 based on debtor's guaranty of a promissory note of R & S Auto Parts dated May 9, 2001. The principal amount of the note is $25,054.98 plus 8.5% interest per annum. The note was secured by a lien against R & S Auto Part's inventory, furniture, fixtures, equipment and accounts. Virginia Heartland's lien is junior to other lenders, and the parties have stipulated that no recovery is anticipated from the collateral.

Debtor filed his individual chapter 13 petition on September 12, 2001, and filed his plan on October 3, 2001. Schedule F of his petition lists total individual unsecured claims of $89,026.00, which includes the debt owed to Virginia Heartland at $27,000.00.

Debtor's schedules state that he has monthly income of $2,326.00 [2] and projected monthly expenses of $2,160.00. Debtor owns real estate with his non-debtor spouse as tenants by the entireties, which is secured by two mortgages in the aggregate amount of $214,657.37.[3] Debtor's chapter 13 plan provides that he will pay to the trustee $166.00 per month for forty eight months, a total of $7,968.00. The plan also provides for direct payment of debtor's home mortgage loan to SunTrust in the amount of $500.00 per month. In the plan, debtor also proposes to pay off the joint mortgage lien held by American Business Credit, holder of second deed of trust on debtor's residence, by selling fifty acres of the collateral. Debtor seeks to use any excess proceeds to purchase a used vehicle.

### Trustee's Objection to Confirmation

The chapter 13 trustee filed an objection to confirmation of plan on October 24, 2001, asserting lack of good faith under 11 U.S.C. § 1325(a)(3) as: 1) debtor proposes in his plan to sell 50 acres of land without further court approval other than confirmation of plan in violation of the Bankruptcy Code and 2) there is no time limitation within which the property is to be sold to generate funds to fund the plan.

### Virginia Heartland's Objection to Confirmation.

Virginia Heartland filed an objection to confirmation of plan on November 5, 2001, asserting lack of good faith under 11 U.S.C. § 1325(a)(3) as: 1)debtor proposes to pay only 10% dividend to unsecured creditors, 2) debtor claims expenses of $150.00 per month for home maintenance, $31.00 per month for cable, and $100.00 per month in charitable contributions, 3) debtor undervalued his residence in his schedules, and 4) debtor attempts to retain an asset titled to himself and his non-bankrupt spouse as tenants by the entireties, which has sufficient equity to satisfy 80% of the claims of the individual unsecured creditors.

### Discussion and Conclusions of Law.

### I. Section 1325(a)(3) Analysis.

 Good faith is not defined in the Bankruptcy Code. Therefore, courts have

---

2001. Case was closed on November 15, 2001.

**2.** This figure is comprised of $1,776.00 for debtor and $550.00 for debtor's spouse.

**3.** Debtor's schedules identify two creditors as having liens on the residence, with a reported aggregate mortgage lien amount of $175,000.00. Actual proofs of claim were filed by SunTrust, holder of the first deed of trust, in the amount of $75,466.00 and American Business Credit, holder of second deed of trust, in the amount of $139,191.37, for a total of $214,657.37 in liens. In financial statement dated November 28, 2000, debtor estimated the value of the residence to be $250,000.00. The current tax assessed value of the real estate is $166,600.00.

some discretion in making a determination of whether a plan is proposed in good faith. *See Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982). Section 1325(a) of the Bankruptcy Code merely states that to be confirmed a Chapter 13 plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). A debtor has the burden of proving that a plan is proposed in good faith. *See, e.g., In re Cushman,* 217 B.R. 470, 475 (Bankr.E.D.Va.1998); *In re Harrison,* 203 B.R. 253, 255 (Bankr.E.D.Va. 1996) (citations omitted). The court cannot confirm a chapter 13 plan that is not proposed in good faith. *See* 11 U.S.C. § 1325(a)(3) (2001). Good faith is an " 'elastic' concept that requires a factual determination on a case-by-case basis" and the court must "examine the practical effect of the plan." *In re Cushman* 217 B.R. at 475–76.

 The court finds that debtor's proposal to sell fifty acres of land without further court approval other than confirmation of plan and with no time limitation within which the property is to be sold to generate funds to fund the plan is in violation of 11 U.S.C. § 1325(a)(6). Debtor must prove ability to make all payments under the plan and to comply with plan. 11 U.S.C. § 1325(a)(6)(2001). In evaluating debtor's ability to comply with the plan, the court must consider whether the plan has a "reasonable likelihood of success." *In re Fantasia,* 211 B.R. 420, 423 (1st Cir. BAP 1997). Further, if the plan is too speculative, the court should deny confirmation on the basis that the plan is not feasible. *In re Reines,* 30 B.R. 555, 561 (Bankr.D.N.J.1983).

 It does not appear that debtor's plan was proposed in good faith. Debtor's plan is contingent upon debtor selling fifty acres of land for a price sufficient to pay off the lienholder. In the instant case, debtor cannot prove there is a reasonable likelihood that the plan will succeed as it is totally dependent on a finding a suitable purchaser.

If debtor is unsuccessful in finding a purchaser, he will be unable to fund the plan. On his Schedule J, debtor states that his monthly home mortgage payment is $500.00, which represents only the mortgage payment of SunTrust, holder of first deed of trust on debtor's residence and lien in the amount of $75,466.00. The total of both of debtor's mortgage liens with SunTrust and American Business Credit equals $214,657.37, requiring a much higher monthly mortgage payment than the $500.00 included in the plan. Debtor's plan shows a monthly excess of only $166.00 per month. If debtor is unsuccessful in selling the land, he would be required to include the mortgage lien of American Business Credit in his plan and would be left with negative disposable income and unable to be a chapter 13 debtor.

## II. *Totality of the Circumstances Approach*

 The Fourth Circuit has adopted a "totality of the circumstances" approach when evaluating debtor's good faith under 11 U.S.C. § 1325. *Solomon v. Cosby,* 67 F.3d 1128, 1134 (4th Cir.1995); *Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986). This approach requires the examination of the following non-exhaustive list of factors:

> (1) the percentage of the proposed repayment; (2) debtor's financial situation; (3) the period of time over which payment will be made; (4) debtor's employment history and prospects; (5) the nature and amount of unsecured claims; (6) debtor's past bankruptcy filings; (7) debtor's honesty in representing facts; and (8) any unusual or exceptional problems facing the particular debtor.

*In re Harrison,* 203 B.R. at 255 (citing *Deans,* 692 F.2d at 972).

Debtor's plan fails the totality of the circumstances test as it is deficient in two areas: percentage of proposed repayment and disposable income.

### A. *Percentage of Proposed Payment*

■ Section 1325 has no requirement that unsecured creditors must be paid a meaningful sum.[4] The only payment floor appears in 11 U.S.C. § 1325(a)(4) which "specifically requires as protection to the unsecured creditors that the amount paid on each such claim cannot be 'less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7.'" *Deans,* 692 F.2d at 970–71.

■ While "failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts, ... substantiality of proposed repayment is but one factor to be considered in deciding if a plan has been proposed in good faith; a court must make its determination based on all militating factors." *Id.* at 972. A small payout to general unsecured creditors can provide indicia of a chapter 13 debtor's "unfair manipulation" of the bankruptcy code and its fundamental principles. *See In re Wilcox,* 251 B.R. 59, 68 (Bankr.E.D.Ark.2000).

■ When bad faith allegations are made by an unsecured creditor objecting to confirmation, the court must scrutinize debtor's plan, its treatment of unsecured debt and the percentage payout that might be excepted from discharge. *See* 11 U.S.C. § 1325(a)(3)(2001). However, a plan that proposes a low percentage payout to unsecured creditors is not, by itself, sufficient justification for a finding of bad faith. *In re Chaffin,* 816 F.2d 1070, 1073–74 (5th Cir.1987), reh'g, 836 F.2d 215 (5th Cir.1988) (citing *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir. 1983)).

Here, debtor proposes to pay into the plan $166.00 per month for forty eight months, which is equivalent to a 10% dividend to unsecured creditors. While this factor alone might not be enough for the court to deny confirmation of debtor's plan, the court must also look to other factors. It is highly significant that debtor's plan proposes to pay 100% of a joint home mortgage debt. *See In re Daniel,* 260 B.R. 763, 767 (Bankr.E.D.Va.2001).

■ It is well settled in the Fourth Circuit that equity in real property held by husband and wife as tenants by the entireties is not subject to the claims of the individual creditors of either spouse. *Ford v. Poston,* 773 F.2d 52, 53 (4th Cir.1985) (*citing Vasilion v. Vasilion,* 192 Va. 735, 66 S.E.2d 599, 602 (1951)). However, in analyzing the good faith of debtor's Chapter 13 plan, the court cannot ignore debtor's attempt to retain an asset titled to himself and his non-bankrupt spouse as tenants by the entireties, which has sufficient equity to satisfy 80% of all claims of the individual unsecured creditors.

---

4. The Fourth Circuit has expressly rejected any attempt to designate a *per se* rule of requiring substantial repayment in order to prove good faith on the part of debtor proposing a chapter 13 plan. *See Deans,* 692 F.2d at 972 (detailing the plain language of § 1325(a)(3) precludes importation of a *per se* rule requiring substantial repayment of unse- cured claims into the good faith requirement of every plan, and that if Congress had wanted to make substantial repayment a condition precedent to confirmation, it would have explicitly done so and there would be mention of the percentage or amount each plan must offer to unsecured creditors, rather than a comparative liquidation analysis).

The court determines that debtor's mere 10% payout to individual unsecured creditors, when combined with debtor's 100% payment of a joint home mortgage, which has sufficient equity to satisfy 80% of all claims of the unsecured creditors precludes this court from finding debtor's good faith in proposing this plan.

### B. *Continuing Payment of Nonessential Items.*

Virginia Heartland also raised an objection to certain expenses in debtor's Schedule J of $150.00 per month for home maintenance, $31.00 per month for cable, and $100.00 per month for charitable contributions. Section 1325(b) states that when an unsecured creditor objects to confirmation, chapter 13 plans cannot be confirmed unless the debtor proposes to pay into the plan all of his or her disposable income for at least three years. 11 U.S.C. § 1325(b)(1)(B)(2001). Disposable income is defined as:

> income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) [5] to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the

year in which the contributions are made . . .

11 U.S.C. § 1325(b)(2)(A) (2001).

■ No strict test exists for determining whether expenditures are reasonably necessary, and the standard is to be determined on a case by case basis. *In re Gillead,* 171 B.R. 886, 890 (Bankr.E.D.Cal. 1994). Courts have determined that "reasonably necessary" is an amount "sufficient to sustain basic needs not related to [the debtor's] former status in society or the lifestyle to which he is accustomed." *In re Andrade,* 213 B.R. 765, 768–69 (Bankr.E.D.Cal.1997) (quoting *In re Jones,* 55 B.R. 462, 466 (Bankr.D.Minn.1985)). The reasonableness of a debtor's discretionary expenditures "must be determined from the totality of the debtor's individual circumstances." *In re Andrade,* 213 B.R. at 769.

### 1. *Cable and Home Maintenance Expenses*

■ The court is satisfied with debtor's justification for the cable expense as debtor lives in a remote area and is unable to receive a television signal in the absence of cable. Therefore, the court finds the $31.00 cable expense to be reasonably necessary. However, the court finds that debtor has not shown a need for the $150.00 monthly expense for home maintenance, and this amount is considered excessive in the determination of disposable income.

---

5. Section 548(d) states in pertinent part:
 (d)(3) In this section, the term "charitable contribution" means a charitable contribution as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution—
 (A) is made by a natural person; and
 (B) consists of—
 (i) a financial instrument . . . ; or
 (ii) cash.

 (d)(4) In this section, the term "qualified religious or charitable entity or organization" means—
 (A) an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or
 (B) an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.
 11 U.S.C. § 548(d) (2001).

## 2. *Charitable Contribution Expense*

 Congress added the provision for charitable contributions to the § 1325 definition of disposable income in the Religious Liberty and Charitable Donation Act of 1998, Pub.L. No. 105–183, as an attempt to " 'protect the rights of debtors to continue to make religious and charitable contributions after they file for bankruptcy relief.' " *In re Kirschner,* 259 B.R. 416, 421–22 (Bankr.M.D.Fl.2001).[6]

As Congress did not place this provision regarding charitable contributions in a stand alone section, courts are split over whether a qualified contribution of less than fifteen percent of debtor's gross income must undergo "reasonably necessary" analysis. *See, id.* at 422. Several courts have held that a charitable contribution expense, once qualified under § 548(d) and under the 15% threshold, is per se reasonably necessary and exempt from disposable income objections. *See id.; see also Drummond v. Cavanagh (In re Cavanagh),* 250 B.R. 107, 112 (9th Cir. BAP 2000).

 Another interpretation states that to be exempted from treatment as disposable income, charitable contributions must meet a three part analysis: 1) 548(d) qualifications, 2) under the fifteen percent limit, and 3) must also be "reasonably necessary." *In re Buxton,* 228 B.R. 606, 610 (Bankr.W.D.La.1999).

 The court is persuaded by the *Buxton* interpretation of § 1325 disposable income. It seems only appropriate that one debtor should not have a right to greater discretionary income than another because he or she wishes to make charitable contributions. In determining the reasonableness of charitable contributions, the court should consider the totality of the circumstances. *See In re Andrade,* 213 B.R. at 769; *In re Reynolds,* 83 B.R. 684, 685 (Bankr.W.D.Mo.1988). Even though debtor's proposed charitable contribution is less than 15% of his gross income, the court cannot ignore that the $100.00 amount given to charity is more than one half of debtor's proposed plan payment of $166.00. When combined with the mere 10% payout to unsecured creditors, the court finds that a charitable contribution of $100.00 is excessive.

## III. *Conclusion.*

To summarize, debtor's plan was not filed in good faith because debtor proposes to pay 100% of a joint mortgage debt while paying only a 10% dividend to his individual unsecured creditors, includes excessive expenditures and proposes to fund the plan with the speculative sale of land. Because the court finds that debtor has not proposed this plan in good faith and because the plan fails the totality of the circumstances test, the court will sustain the objections of the chapter 13 trustee and Virginia Heartland and deny confirmation of debtor's plan.

A separate order will be entered.

---

**6.** Prior to passage of the Act, many courts held that charitable expenses could never fall within the category of "reasonably necessary" expenses. *See, e.g., In re Tessier,* 190 B.R. 396 (Bankr.D.Mont.1995), *In re Lees,* 192 B.R. 756 (Bankr.D.Mont.1994), *In re Miles,* 96 B.R. 348 (Bankr.N.D.Fl.1989).