**In re Robert L. CHRZANOWSKI, Debtor.**

**Bankruptcy No. 84–352.**

United States Bankruptcy Court, D. Delaware.

Feb. 23, 1987.

Thomas D. Runnels, Newark, Del., Trustee.

John J. O'Brien, Wilmington, Del., for debtor.

Bayard, Handelman & Murdoch by Gerard P. Kavanaugh, Jr., Wilmington, Del., for Kathleen Gowen.

HELEN S. BALICK, Bankruptcy Judge.

The Debtor, Robert L. Chrzanowski, filed a Chapter 13 petition on October 4, 1984, listing five unsecured creditors. A proposed plan in the Chapter 13 statement was filed on October 22. The plan proposes a monthly payment of $200 for 36 months which results in $180 per month for distribution among creditors holding scheduled unsecured debt of $33,949.93. Three of the debts arise out of the dissolution of Debtor's marriage. The major creditor is his former wife, Kathleen Gowen, who was awarded a property settlement judgment of $25,940 on August 17, 1984. Fees due her attorney and his attorney in the Family Court action are listed at $2,500 and $2,003.85. The remaining creditors are Dextar Credit Union for a personal loan, $3,256.08, and Bank of Delaware for a Visa charge, $250.

Kathleen Gowen has filed motions objecting to confirmation of the proposed plan and to convert the case to Chapter 7 contending that the plan was not proposed in good faith and is not in her best interest.

■ Apart from Gowen's allegations confirmation of the proposed plan must be denied. If Debtor had filed his petition four days later, he would have been required under Section 1326(a) of Title 11 United States Code to commence the proposed payments under the plan within 30 days after the plan was filed. In any event, he commenced payments and his initial payment record is good. The trustee has in his possession $2,575, but as of December 23, that amount would have been $5,200 had he made all the proposed payments. Debtor's explanation for this is that he cannot afford to make the proposed monthly payment because his personal present financial obligations have increased, so in early 1986 he reduced the amount of the payment which continued to diminish as the year progressed. Thus, by admission Debtor will not be able to comply with Section 1325(a)(6).

■ The trustee further points out that on the basis of Debtor's original statement, the plan does not provide for all of Debtor's disposable income. The statement reflects an annual gross income of $35,577 and a monthly take-home pay of $2,129 with estimated expenses of $1,803.50 which includes an estimated $300 for religious and charitable contributions and recreation. The difference between the take home and expenses is $325.50, $200 of which is committed for planned payments leaving an excess of $125.50. This amount, especially when considered along with the sum of $202.75 being withheld by his employer for United Way, DuPont Country Club dues and his IRA, is excess which is not reasonably necessary for Debtor's maintenance or support. Therefore, Debtor's plan cannot be confirmed because he has not provided for payment to the trustee of all disposable income as required under Section 1325(b)(1)(B) and (2)(A).

■ Gowen contends Debtor filed his Chapter 13 case to avoid the consequences of the Family Court judgment. She claims his plan was proposed in bad faith because he misrepresented his past and present financial condition, discounted his employment history and prospects for future income with the resulting inadequate distribution to his creditors.

In deciding whether a proposed plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13, this Court held in the matter of *Keiser* that there are 11 factors to be considered. Of the eleven enumerated, five are applicable to the circumstances of this case. They are:

1. The amount of the proposed payment and the amount of Debtor's surplus.

2. Probable or expected duration of the plan.

3. Debtor's employment history, abilities to earn and likelihood of future increases in income.

4. The accuracy of the plans, statements of debts, expenses and percentage repayment of unsecured debts and whether any inaccuracies are an attempt to mislead the Court.

5. The motivation and sincerity of the Debtor seeking Chapter 13 relief.

The trustee's contentions as to factors one and two have been addressed and my previous comments are applicable here. Additionally, note must be taken that even if Debtor were to make all payments as proposed under his plan for the three year term, there would be a distribution of $6,480 to be proratably shared among creditors holding claims totaling claims $33,949.93.

Looking next at factors three and four, the proposed pay-out represents a distribution of approximately five percent of the amount of debt. Debtor is a chemist and has been employed by DuPont since 1974. Debtor's income tax returns for the years 1980, '81, '83, '84 and '85 reflect income from salary as follows:

1980: $35,291.53.

1981: $35,080.

1983: $41,450.

1984: $43,320.

1985: $43,628.

The 1982 tax return was not submitted into evidence and there was no testimony as to the amount of salary for that year. The increase in salary over the six years is in excess of $8,300 and suggests the likelihood of future increases.

The tax returns reveal that Debtor's Chapter 13 statement is inaccurate. The amount stated as his 1983 gross income at Paragraph 2(f.)(4) is the amount of his adjusted gross income.

The Family Court decision (Gowen Exhibit 9) reflects that debtor undertook investments as "kind of a hobby" in the late '70's. After reporting income and losses from investments, his total 1983 income was $41,428.41. Adjustments for business expenses, the $2,000 IRA deduction and an alimony payment of $3,600 brought his taxable income to $35,577.31.

His 1984 return reflects total income of $46,542.50 with an IRA deduction of $1,992 or adjusted gross income of $44,550.50. There was no more alimony permissible under the laws of the State of Delaware, consequently that deduction was not available to him in 1984.

The "13" statement contains further inaccuracies. In connection with his investment hobby, Debtor had several financial accounts which immediately prior to filing his petition had balances ranging from minimal to upwards of $34,000. His explanation for not listing these accounts which included among others, Oppenheimer Fund, Merrill Lynch and Fidelity investments as well as Wilmington Trust Company bank accounts and a Thrift and Pension Plan with his employer is that the balances were minimal or that the funds belonged to his mother or his friend and employee, Thomas R. Taylor. He stated that over the years his father, and upon his father's death his mother, and Taylor relied upon him to make investments for their benefit. All of this was done in his name. None of these accounts are listed under Paragraph 7 of the statement.

After he filed his petition but before he filed his statement, he transferred to Thomas R. Taylor $9,555, and in September before filing his petition he transferred to his mother securities having a value of approximately $35,000. None of this was reflected in Paragraph 11 of the statement.

The statement further indicates under Paragraph (2)(e) that he had not operated a business nor had any business, in partnership or otherwise, within the preceding three years. His testimony was to the same effect. Yet his deposition testimony was that he had a business arrangement to handle investments for Taylor and his mother. In connection with these arrangements, he reported all income and losses on his tax returns. The end result of which was his taking a $30,000 loss and the other participants receiving 30 percent return on their investment. These inaccuracies and omissions cloud the true picture of Debtor's financial situation and the statement actually misleads anyone examining it.

The above-related transfers, omissions and inaccuracies as well as the minimal payment proposed is evidence of bad faith. This is emphasized even more by Debtors incurring unauthorized debt subsequent to

filing his petition by borrowing funds to buy a new Cherokee Jeep for $14,000. In light of Debtor's annual salary in excess of $43,000, his continuing to accumulate savings through a Thrift Plan and an IRA, driving a new car, making substantial contributions to religious and charitable organizations, maintaining membership in a country club and retaining additional funds for recreation, any proposal less than a pay-out of one hundred percent to unsecured claimants would be a travesty.

Inasmuch as conversion to Chapter 7 would result in a little or no distribution to creditors based upon the trustee's representations, it may be in the best interest of creditors to give Debtor the opportunity to propose a one hundred percent plan. I am inclined to give the Debtor this opportunity provided such a plan is filed within 30 days of this date. If a plan is not filed by the end of the business day on February 13, 1987, the case will be dismissed with prejudice without further notice.

I point out to counsel for the Debtor that this decision precludes the Debtor from taking advantage of 11 United States Code Section 1307(a) or (b) which, under certain circumstances, permits the dismissal or conversion for a Chapter 7.