**In re Lonnie Lee CAVANAUGH and Kristen Lee Cavanaugh, aka Kris Brookins, Debtors.**

**Bankruptcy No. 94–01709.**

United States Bankruptcy Court, D. Idaho.

Nov. 8, 1994.

Milan E. Miller, Lewiston, ID, for debtors.

Robert L. Brower, Jones, Brower & Callery, Lewiston, ID, for Potlatch No. 1 Federal Credit Union.

L.C. Spurgeon, Trustee.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Potlatch No. 1 Federal Credit Union ("PFCU"), an unsecured creditor, objects to the debtors' claim of homestead exemption and to the confirmation of the debtors' Chapter 13 plan.

Lonnie Lee Cavanaugh and Kristen Cavanaugh filed their joint petition for relief pursuant to Chapter 13 of Title 11 of the United States Code on July 8, 1994.

1. Idaho Code § 55-1001 provides in relevant part:

> \* \* \* \* \* \*
>
> (2) "Homestead" means and consists of the dwelling house or the mobile home in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved; or unimproved land owned with the intention of placing a house or mobile home thereon.... Property included in the homestead must be actually intended or used as a principal home for the owner.
>
> \* \* \* \* \* \*
>
> (4) "Owner" includes, but is not limited to, a purchaser under a deed of trust, mortgage, or contract.

### I.

### HOMESTEAD EXEMPTION

■ Pursuant to Idaho Code §§ 55-1001[1] and 55-1004(1)[2] the debtors have claimed the residence located at 1528 Grelle Avenue, Lewiston, Idaho (the "residence") as their homestead.

PFCU contends that pursuant to Idaho Code § 55-1006 the debtors may not claim the residence as their homestead because they have not resided in the residence for a continuous period of over six months. Idaho Code § 55-1006 provides:

> A homestead is presumed abandoned if the owner vacates the property for a continuous period of at least six (6) months. However, if an owner is going to be absent from the homestead for more than six (6) months but does not intend to abandon the homestead, and has no other principal residence, the owner may execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of nonabandonment of homestead and file the declaration for record in the office of the recorder of the county in which the property is situated. The declaration of nonabandonment of homestead must contain:
>
> (1) A statement that the owner claims the property as a homestead, that the owner intends to occupy the property in the future, and that the owner claims no other property as a homestead;
>
> (2) A statement of where the owner will be residing while absent from the

Idaho Code § 55-1001(2) and (4).

2. Idaho Code § 55-1004 provides in relevant part:

> (1) Property described in section 55-1001, Idaho Code, constitutes a homestead and is automatically protected by the exemption described in section 55-1003, Idaho Code, from and after the time the property is occupied as a principal residence by the owner....
> Idaho Code § 55-1004(1).

homestead property, the estimated duration of the owner's absence, and;

(3) A legal description of the homestead property.

Idaho Code § 55–1006.

The debtors admit prior to filing their petition they did not live in the residence for a continuous period of over six month. The debtors contend, however, they are still entitled to the exemption because they filed a declaration of nonabandonment with the county recorder on September 6, 1994. PFCU contends that the declaration is invalid because it was filed after the six month period had run.

Idaho Code § 55–1006 does not explicitly state a deadline for the filing of the declaration of nonabandonment, but the tense of the clause "if the owner is going to be absent" for over six months strongly suggests the legislature intended the declaration to be filed prior to the homesteader's absence or at a minimum prior to the running of the six month period. Here the debtors' declaration was filed over six months after they ceased to reside in the residence.

Further, the debtors did not file their declaration of nonabandonment until after they filed their bankruptcy petition. Idaho Code § 55–1006 requires the owner of the property file the declaration. At the time the debtors filed their declaration, the residence was property of the estate not property of the debtors. It is thus questionable whether the debtors had standing to file the declaration.

■ Finally, the debtors did not file their declaration of nonabandonment until after the PFCU filed its objection to their claim of exemption. Clearly, the purpose of Idaho Code § 55–1006 is to provide creditors with notice that a debtor who is not living in a residence for an extended period of time has claimed the residence as a homestead. That purpose is not served if a debtor is allowed to file its notice after its creditors have begun proceeding against it.

■ Accordingly, Idaho Code § 55–1006 applies and the debtors are presumed to have abandoned the homestead. However, there is no indication in section 55–1006 that the presumption is irrebuttable. Nor is there any indication that PFCU relied upon the presumption in allowing the debtors to become indebted to them.

■ At the hearing before this Court on October 5, 1994, Lonnie Cavanaugh testified that sometime prior to January of 1994 the debtors executed a contract to sell the residence. Pursuant to the contract of sale, the debtors vacated the property and the buyers moved in prior to closing. The sale fell through because the debtors were unable to grant the buyers clear title due to a child support lien filed against Lonnie Cavanaugh.

The debtors have never established another homestead. After the sale fell threw, the buyers refused to vacate the premises unless the debtors returned their down payment. The debtors immediately took steps to have the buyers evicted. Although it took over six month to remove the buyers, the debtors have now reoccupied the residence.

The Court concludes the debtors have produced sufficient evidence to show they did not intend to abandon the residence as a homestead. Accordingly, PFCU's objection to the debtors' claim of homestead exemption is denied.

## II.

### CONFIRMATION OF THE PLAN

PFCU objected to confirmation of the debtors' chapter 13 plan on the following grounds: (1) the plan neither proposes to pay PFCU in full nor does it provide that all of the debtors' disposable income will be applied to the plan; (2) the plan is not feasible; (3) the plan is not proposed in good faith.

For the reasons stated below, the Court finds the debtors' plan is feasible. However, because the plan does not provide for the application of all of the debtors' disposable income, the debtors' plan cannot be confirmed.

A. Disposable Income

■ 11 U.S.C. § 1325(b) provides:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may

not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b).

PFCU has objected to confirmation of the plan. PFCU will receive less than the value of its claim under the terms of the plan. The plan cannot be confirmed unless the debtors devote all their disposable income to plan payments.

### 1. 401K Contributions

First PFCU contends the plan does not provide for distribution of all of the debtors' disposable income because the debtors have not included $356.00 a month in 401K payroll deductions in their income.

Those courts considering the issue of whether contributions to pension funds or retirement plans are income for purposes of section 1325(b) have generally held that vol-

untary contributions to retirement plans are not necessary for the maintenance or support of the debtor.[3] On the other hand, mandatory contributions to retirement plans are not considered disposable income.[4]

The debtors' contribution to their 401K plan is voluntary. Therefore their 401K contribution must be considered income for the purposes of Code section 1325(b).

### 2. Home Maintenance

■ The debtors have budgeted $300.00 per month for home maintenance. The debtors contend this amount is necessary due to the damage caused by the buyers before their eviction after the aborted sale of the debtors' residence. The debtors did not testify regarding the nature and extent of the damage caused by the buyers. There is no indication the damage caused by the buyers renders the residence uninhabitable, or will cause accelerated deterioration of the house. Cosmetic repairs to the house are not reasonably necessary "for the maintenance or support" of the debtors. Therefore, the $300.00 budgeted for home maintenance by the debtors is excessive and will not be allowed.

### 3. Medical and Dental Expenses

■ The debtors have budgeted $120.00 a month for medical and dental expenses. The debtors have full medical and dental insurance coverage. The debtors do not have any unusual health problems. Accordingly, it is found the $120.00 per month budgeted by the debtors for health care is excessive.

### 4. Charitable Contributions

■ The debtors have budgeted $55.00 per month for charitable contributions. PFCU contends the debtors should not be

**3.** *In re Fountain,* 142 B.R. 135, 137 (Bankr. E.D.Va.1992) (Debtor may not make payments to her pension fund during the life of the plan while not paying her unsecured creditors in full); *In re Scott,* 142 B.R. 126, 135 (Bankr.E.D.Va.1992) (Debtor's voluntary repayment of funds borrowed from his ERISA plan is not necessary for his support and maintenance and therefore not allowed un 11 U.S.C. § 1325(b)); *In re Ward,* 129 B.R. 664, 668 (Bankr.W.D.Okl.1991) (Debtor's plan cannot be confirmed as it provides for voluntary deductions from debtor's paycheck into

credit union savings account); *In re Festner,* 54 B.R. 532, 533 (Bankr.E.D.N.C.1985) (Debtor's voluntary wage deduction for contribution to retirement plan violated code section 1325(b)).

**4.** *In re Colon Vazquez,* 111 B.R. 19, 20 (Bankr.D.Puerto Rico 1990) (Where Puerto Rico law required deduction from teacher's payroll for the establishment of savings account, deducted amount could not be considered income).

allowed to make any contributions to charity unless they are paying all of their unsecured creditors in full.

The majority of courts that have considered the matter have held that charitable donations are not reasonably necessary for maintenance and support.[5] However, a few courts have confirmed chapter 13 plans despite the inclusion of charitable donations as a budgeted item. For example in *In re Green*, 73 B.R. 893 (Bankr.W.D.Mich.1987)[6], the court held that denying confirmation of a chapter 13 plan based solely on the debtors declared intention to make a tithing to his church would be a violation of the First Amendment. However, the court's analysis in *In re Green*, has been seriously undermined by *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) rehearing denied, 496 U.S. 913, 110 S.Ct. 2605, 110 L.Ed.2d 285 in which the Supreme Court held:

> [I]f prohibiting the free exercise of religion ... is not the object of the [law] but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended.

*In re Lynn*, 168 B.R. 693, 697 (Bankr.D.Ariz. 1994) (*quoting, Employment Div. v. Smith*, 494 U.S. at 878, 110 S.Ct. at 1599–1600). Three bankruptcy courts have held that *Smith* stands for the proposition that the Bankruptcy Code need not yield to a debtor's desire to tithe. *See In re Young*, 152 B.R. 939, 951 (D.Minn.1993) (holding that donations to churches could be considered preferences and or fraudulent transfers); *In re Lee*, 162 B.R. 31, 42 (Bankr.N.D.Ga.1993) (amount a debtor tithes can be considered in a section 707(b) motion to dismiss); *In re Lynn*, 168 B.R. 693, 700 (Bankr.D.Ariz.1994) (the amount a debtor is able to tithe may be

considered in a section 523(a)(8)(B) action to discharge student loan debt).

 Therefore, as long as section 1325(b) is applied neutrally to church and charitable donations it does not violate the First Amendment. However, in determining whether an item is reasonably necessary for the support and maintenance of the debtor, most courts including this Court permit a Chapter 13 debtor some recreational spending. *See also, In re Chrzanowski*, 70 B.R. 447 (Bankr.D.Del.1987); · *In re Kitson*, 65 B.R. 615, 622 (Bankr.E.D.N.C.1986); *In re Greer*, 60 B.R. 547 (Bankr.C.D.Cal.1986) (Some discretionary expenses are necessary for maintenance and support); *In re Anderson*, 143 B.R. 719 at 721 (Bankr.D.Neb. 1992).

> The reasonableness of proposed discretionary expenses must be evaluated in light of the debtors' income and Chapter 13 plan payments. A high income debtor making substantial payments under the plan may retain a greater dollar amount for discretionary expense then could a debtor of modest income who proposes to make no payments to unsecured creditors under the plan.

*In re Anderson*, 143 B.R. at 721; *See also In re McDaniel*, 126 B.R. 782, 783 (Bankr. D.Minn.1991).

 Because the courts allow discretionary spending for some items which are not absolute necessities of life such as modest dinners out, newspapers and other recreational items, the debtors should not be denied the right to make donations purely because of the discretionary nature of these items. Instead, it is concluded the debtors have the right to spend their discretionary funds in any manner they so choose including the making of charitable donations. However, by the same token the debtors have no right to more discretionary income then other debtors merely because they wish to use

---

5. *In re Anderson*, 143 B.R. 719, 721 (Bankr. D.Neb.1992) (*citing In re Reynolds*, 83 B.R. 684 (Bankr.W.D.Mo.1988); *In re Red*, 60 B.R. 113 (Bankr.E.D.Tenn.1986); *In re Tucker*, 102 B.R. 219 (Bankr.D.N.M.1989); *In re Gyurci*, 95 B.R. 639 (Bankr.D.Minn.1989)). *In re Packham*, 126 B.R. 603, 608 (Bankr.D.Utah 1991) (*citing, In re Miles*, 96 B.R. 348, 350 (Bankr.N.D.Fla.1989);

*In re Curry*, 77 B.R. 969 (Bankr.S.D.Fla.1987); *In re Chrzanowski*, 70 B.R. 447 (Bankr.D.Del. 1987); *In re Sturgeon*, 51 B.R. 82 (Bankr. S.D.Ind.1985)).

6. *Aff'd In re Green*, 103 B.R. 852 (Bankr. W.D.Mich.1988).

some of it to make charitable donations. Therefore, the debtors' expenses for charitable donations will be considered with their other discretionary funds when determining the reasonableness of charitable contributions.

It has already been found that some of the debtors' budgeted items are excessive and that the debtors have failed to include $356.00 in their statement of income. Therefore, it is not possible for the Court to determine whether the amount the debtors have set aside as discretionary for recreational, charitable and other use is reasonable as the amount of income they earn, the amount of the payments they will be making under the plan and the extent to which they will be able to pay their general unsecured creditors is unknown at this time.

B. Feasibility

 11 U.S.C. § 1325(a)(6) requires:

the debtor will be able to make all payments under the plan and to comply with the plan.

The debtors are both employed full time. There is no indication in the record that either debtor is likely to become unemployed. Their income is more than sufficient to fund the proposed plan. Accordingly, the Court concludes the plan is in compliance with section 1325(a)(6).

C. Good Faith

11 U.S.C. § 1325(a)(3) requires that:

the plan has been proposed in good faith and not by any means forbidden by law.

PFCU contends the plan is not proposed in good faith because the debtors' budget is excessive and the debtors are not using all of their disposable income to fund the plan.

Because of the foregoing indiscretions in the budget items do not seem to show a lack of good faith in the debtors in filing their chapter 13 petition. Confirmation will not be denied on this ground.

A separate order will be entered denying confirmation and allowing the debtors twenty (20) days within which to amend their budget and submit another proposed plan.