**In re Charlton Leon DAVIS, a.k.a. Chip Davis and Meredith Gay Davis, Debtors.**

Bankruptcy No. 99–11330–13.

United States Bankruptcy Court, D. Montana, Butte Division.

Nov. 29, 1999.

---

Joanne M. Briese, Billings, MT, for Debtors/Plan Proponents.

Robert G. Drummond, Great Falls, MT, for Trustee/Opponent.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this Chapter 13 bankruptcy case the Trustee objects to confirmation of the Debtors' Chapter 13 Plan on several grounds, including that the Debtors' Chapter 13 Plan fails to commit all of their disposable income as required by 11 U.S.C. § 1325(b)(1)(B) because their plan payments do not include mandatory retirement deductions from Debtor Charlton Leon Davis's ("Charlton") paycheck. After due notice, a hearing on confirmation of the Debtors' Chapter 13 Plan and the Trustee's objections was held at Billings on October 14, 1999. The Trustee ap-

peared in opposition to confirmation on the basis of the holding in *In re Nation ("Nation")*, 236 B.R. 150 (Bankr.S.D.N.Y.1999). Debtors were represented by counsel Joanne M. Briese ("Briese") in support of confirmation. No testimony or exhibits were admitted. The Court granted Debtors time to file a memorandum of law, and took the matter under advisement. The Debtors' memorandum has been filed and reviewed by the Court together with the Trustee's objections. For the reasons set forth below, the Trustee's objections are overruled and the Debtors' amended Chapter 13 Plan is confirmed.

■ There are no disputed issues of fact. The Trustee stipulated that the retirement deductions from Charlton's paycheck are mandatory under Montana State law, and are a condition of his employment. The sole issue of law is whether such mandatory retirement deductions constitute disposable income under § 1325(b)(2). I hold they do not.

## BACKGROUND

Debtors filed their voluntary Chapter 13 petition on May 19, 1999, and filed their Schedules, Statements and Plan on June 2, 1999. An amended Plan was filed October 13, 1999. At Schedule I Debtors list a combined net monthly income of $2,418.25. Charlton is employed by Yellowstone County as a detention officer and has an estimated gross monthly income of $1,707.00. His payroll deductions include $142.00 per month for "public emp. retirement". These payroll deductions are mandatory under State law as part of the Public Employees Retirement Act, Mont. Code Ann. § 19–1–301, *et seq.*, and the Public Employees Retirement System ("PERS") Act, Mont.Code Ann. § 19–3–101, *et seq.* Charlton's membership in PERS is compulsory under § 19–3–201(2)(B) and § 19–3–203(2). The deduction of Charlton's PERS contributions from his wages by his employer is governed by § 19–3–315(5).

Charlton's other deductions consist of union dues, payroll taxes, social security, and workers compensation, leaving him with total net monthly take home pay in the amount of $1,347.25. Charlton's also receives VA disability in the sum of $365 per month. The Debtors each receive an income tax refund averaging $66 per month. Debtor Meredith Gay Davis is also employed, and earns total net monthly income of $640. Their joint expenses total $1,970, leaving them available plan payments of $448.25.

Debtors' amended Plan provides for monthly plan payments in the sum of $450 commencing July 1999 until October of 1999, and then in the sum of $507 [1] for the remainder of the 60–month plan term. The Trustee's objection to the original Plan included objections to the treatment of secured creditors Source One Mortgage ("Source One") and Sears, insufficient funding, and lack of good faith in filing the Plan.

The Trustee did not file a response to Debtors' amended Plan filed October 13, 1999, which pays Source One's secured claim outside the plan except for the arrearage which is treated in the amount set forth on Proof of Claim No. 11, filed by Source One on October 6, 1999. Sears is omitted from the amended Plan, thus curing that objection.

Total plan payments proposed by the amended Plan are $30,192.00, which appear to satisfy the requirements of 11 U.S.C. §§ 1322(a)(2) and 1325(a)(5) for paying secured and priority claims. The Trustee did not pursue those objections at hearing, and the Court therefore deems those objections abandoned and cured. The Trustee's good faith objection is likewise deemed withdrawn by the Trustee's withdrawal of his motion to convert to Chapter 7, filed September 24, 1999. The Trustee's sole remaining objection to con-

firmation is based upon the disposable income requirement of § 1325(b)(1)(B).

## DISCUSSION

Section § 1325(b)(1)(B) provides:

(b)(1) If the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

\* \* \* \* \* \*

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to made payments under the plan.

The Debtors' amended Plan provides that the Debtors' projected future earnings and other income are submitted to the supervision of the Trustee and their disposable income is committed to their Plan. ¶¶ 1 & 5. Notwithstanding, the Trustee objects on the grounds Charlton's PERS deductions constitute disposable income.

Disposable income is defined at § 1325(b)(2):

For purposes of this subsection, "disposable income" means income which is received by the Debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

This Court has held that for the purposes of § 1325(b), voluntary contributions to retirement plans are not necessary for the maintenance or support of a debtor or a debtor's dependents, and must be considered disposable income under § 1325(b). *In re Andrus,* 16 Mont. B.R. 270, 274

---

1. Although the Debtors' Schedules I and J show disposable income of only $448.25 available for plan payments, their expenses include cable TV ($25), recreation ($50) and miscellaneous ($60), which together could allow the Debtors to make their proposed $507 plan payment.

(Bankr.Mont.1997); *In re Baldwin*, 15 Mont. B.R. 424, 425 (Bankr.Mont.1996). The instant case does not involve voluntary retirement contributions. At issue here is whether mandatory contributions to retirement, which are a condition of a debtor's employment, must be considered disposable income.

There is a split of authority on this issue. One line of cases holds that mandatory contributions to retirement plans are not considered disposable income. *In re Cavanaugh*, 175 B.R. 369, 373 & n. 4 (Bankr.Idaho 1994); *In re Davis*, 1994 WL 740454, *2 (Bankr.D.Idaho 1994); *In re Colon Vazquez*, 111 B.R. 19, 20 (Bankr.D.Puerto Rico 1990); *see also In re Smith*, 187 B.R. 678, 679 (Bankr.Idaho 1995), *vacated on other grounds by In re Smith*, 207 B.R. 888, 889 (9th Cir. BAP 1996). The other line, relied upon by the Trustee, is the *Nation* case which holds that the Bankruptcy Code preempts State laws mandating retirement deductions from the debtor's paycheck, and that all retirement contributions are disposable income. *In re Nation*, 236 B.R. at 154–55.

The Trustee argues that preemption is appropriate where there is a comprehensive scheme of regulation, such as the Bankruptcy Code, which shows that Congress left no room to supplement it. The Debtors respond that the Bankruptcy Code is not so pervasive that the Montana PERS requirements should be preempted. The Court agrees with the Debtors that preemption is not applicable.

The court in *Nation* undertook a preemption analysis and concluded that the New York regulations and statutes requiring mandatory retirement deductions "directly conflict with the Bankruptcy Code's requirement that all property listed under Sections 541 and 1306 be included as property of the estate as well as Section 1325's requirement that all disposable income be included in the plan. This conflict between the Bankruptcy Code and the pension regulations is fundamental." 236 B.R. at 154. I do not agree that the disposable income

requirement of § 1325(b) is directly in conflict with the PERS provisions of the Montana Code mandating the retirement deductions.

Rather, under § 1325(b)(2)(A) and & (B) the Court has the duty of deciding whether a debtor's expenses are reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. § 1325(b)(2)(A); *see* 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 1325.08[4][b][i] (15th ed.1998). As *Collier* provides, "expenses over which the debtor has no control, or which are necessary to the debtor's employment, are undoubtedly 'reasonably necessary'." 8 *Collier on Bankruptcy* ¶ 1325.08[4][b][i]; *In re Colon Vazquez*, 111 B.R. 19, 20. In the instant case Charlton has no control over the PERS deductions, and they are required to be deducted from his wages pursuant to § 19–3–315(5). There can be no reasonable dispute that Charlton's employment by Yellowstone County is reasonably necessary to the support of the Debtors and their three minor children. Charlton earns more than twice as much as Meredith, and without his income from Yellowstone County Debtors expenses would far exceed their income. The Court's duty to determine what is reasonably necessary for the Debtors' support of themselves and their children requires it to analyze PERS requirements under § 1325(b)(2), and not simply apply the doctrine of preemption.

The Ninth Circuit recently discussed the preemption doctrine in *Lindsey v. Tacoma–Pierce County Health Dept.*, 195 F.3d 1065, 1068–69 (9th Cir.1999):

Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Issues of federal preemption arising under the Supremacy Clause, however, "start with the assumption that the his-

toric police powers of the States [are] not to be superseded by . . . [a] Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Congressional intent is, therefore, the " 'ultimate touchstone' of preemption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (*quoting Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in the legislative field. *See Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608. When, however, Congress considers the issue of preemption and adopts a preemption statute that provides a reliable indication of its intent regarding preemption, the scope of federal preemption is determined by the preemption statute and not by the substantive provisions of the legislation. *See id.* at 517, 112 S.Ct. 2608. The reason is that "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.*

Congress has not enacted a statute in the Bankruptcy Code that explicitly preempts Montana's PERS statutes, and this Court does not view Montana's PERS requirements as actually conflicting with federal law, notwithstanding *Nation*, 236 B.R. at 154–55. The Trustee contends that the third instance, where federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in the legislative field, supports a holding that the disposable income requirement preempts Montana's PERS statutes. I do not agree that § 1325(b)(2) preempts Montana's PERS statutes. Rather, § 1325(b)(2) requires only that the Court determine whether the PERS contributions are reasonably necessary for the support of the Debtors and their dependents.

The Ninth Circuit discussed Congress' intent to preempt in *MSR Exploration Ltd. v. Meridian Oil, Inc., et al.*, 15 Mont. B.R. 96, 101–02, 74 F.3d 910, 913 (9th Cir.1996):

As the Supreme Court said in *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (citations omitted):

The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., art. VI, cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose."

*See also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990).

The Trustee cites no explicit preemptive language in the Bankruptcy Code or § 1325(b), and thus any preemption intended by Congress must come from an inference that Congress left no room for the States to supplement the scheme of federal regulation. The Court cannot discern any such intent that Congress left no room for the States to supplement what is "reasonably necessary" under § 1325(b). On the contrary, the use of a phrase such as "reasonably necessary" appears to invite the Court to look at the circumstances of each case and each individual debtor, and his or her obligations under State law or contract to determine whether such obligations are in fact reasonably necessary for the support of debtors and their dependents. § 1325(b)(2)(A).

In the instant case the Debtors never receive as income to pay current debts or expenses the PERS deductions which the Trustee argues constitute disposable income, unless and until they receive the pension benefit in the future upon retirement. The PERS deductions are deducted from Charlton's paycheck, just like taxes and union dues. The court in *Nation* distinguished between taxes and union dues, i.e., deductions taken for the purpose of satisfying ongoing, post-petition obligation of the debtor to some third party, and retirement deductions placed in a savings or pension account for the debtor's own benefit. 236 B.R. at 151–52.

The court found a fundamental conflict between the State requiring retirement deductions and the disposable income requirement because the debtor was in effect distributing assets of the estate to herself in the form of future retirement benefits while forcing the creditors to absorb an even greater loss. 236 B.R. at 152, 155. That reasoning is fallacious because under Montana law the creditors cannot reach the retirement contributions by levy or attachment outside bankruptcy since they are exempt from levy under Mont.Code Ann. § 19–2–1004(1). The instant case is further distinguishable, because under

Montana law Charlton's PERS deductions are part of a pension trust fund to pay benefits to all eligible members, not just to Charlton. Mont.Code Ann. § 19–2–501, *et seq.* Montana employers also contribute to PERS, and are required to remit all contributions both from themselves and their employees to PERS. Mont.Code Ann. §§ 19–2–506(1) and 19–3–316.

If Charlton's PERS deductions were ordered payable under the Plan, the shortfall in the pension trust fund could affect innocent beneficiaries and his employer. The employer could be compelled to make up the shortfall and pay a penalty. § 19–2–506(2). The employer could even be forced to assess and collect a property tax on itself to pay for the shortfall. § 19–3–204. Thus, Charlton would not be the only one adversely affected if his mandatory PERS deductions were held to be disposable income. Section 1325(b)(1) requires that the Debtors pay their disposable income into the Plan, but it cannot be read to require that Charlton's employer subsidize Debtors' Plan by making up for the shortfall in his PERS deductions so that they can be paid to creditors instead of PERS members.

*Nation* is further distinguishable because in that case the court found that the pension contributions were not mandatory in any material, consequential sense. 236 B.R. at 153; 155 n. 8. In the instant case, the Trustee stipulated that the PERS requirements are mandatory. There is no dispute that Charlton's employment is reasonably necessary for the Debtors' support of themselves and their dependents. He is considered disabled by the VA, yet is employed by Yellowstone County, and earns more than twice as much income as his wife Meredith.

In *re Jaiyesimi*, 236 B.R. 145, 148 (Bankr.S.D.N.Y.1999), cited in *Nation*, the court noted that while repayment of a pension loan is mandatory, the employer failed to demonstrated that repayment is a condition of employment. By contrast, in the instant case it is not disputed that

Charlton's PERS deductions are mandatory under State law. Since the deductions are mandatory for Charlton's employment, and from his employment the Debtor provides what is reasonably necessary for his and his dependents' support, this Court holds that his PERS deductions under State law are not disposable income.

The court in *Nation* opined that considering whether contributions were a condition of employment is addressing the wrong issue, and that the bankruptcy court has the power to enjoin not only involuntary payroll deductions but also other consequences such as the termination of employment. *Nation*, 236 B.R. at 153–54. In other words, under *Nation* the court would have the bankruptcy court not only preempt and undermine State PERS laws, but would force employers to subsidize a debtor's creditors and make up for the shortfall in the debtor's PERS contributions which are found to be disposable income, and force the bankruptcy court to oversee and enjoin employers to protect debtors from termination while their PERS contributions were being transferred from PERS beneficiaries to creditors.

The Court declines to follow the *Nation* preemption analysis because it is inconsistent with the "reasonably necessary" language of § 1325(b)(2). This Court does not view this as a matter of federal preemption under the Supremacy Clause. Rather, it is simply a matter of what is reasonably necessary for the maintenance and support of the Debtors and their three dependents under § 1325(b). The Court adopts the better reasoned line of authority of the Idaho bankruptcy courts and holds that Charlton's mandatory PERS deductions are not disposable income under § 1325(b). *In re Cavanaugh* [2], 175 B.R. at

373 n. 4; *In re Davis* 1994 WL 740454, *2; *In re Colon Vazquez*, 111 B.R. 19, 20; *see also In re Smith*, 187 B.R. at 679, *vacated on other grounds by In re Smith*, 207 B.R. at 889. Charlton's PERS deductions are mandatory, and therefore are not disposable income under § 1325(b)(2)(B).

IT IS ORDERED the Trustee's objections to confirmation, filed September 22, 1999, and October 7, 1999, are overruled; and a separate Order shall be entered confirming the Debtors' first amended Chapter 13 Plan, filed October 13, 1999.

---

**2.** The court in *Nation* cites *Davis* and *Cavanaugh*, among several other cases, as part of the "great majority of cases" which hold that § 1325(b) requires that funds contributed to savings or pension plans constitute disposable income that must be paid to creditors under a plan. 236 B.R. at 152. Both *Davis* and *Cava-*

*naugh*, however, specifically distinguish between mandatory and voluntary contributions, and hold that mandatory contributions are not disposable income. *Cavanaugh*, 175 B.R. at 373 n. 4; *In re Davis*, 1994 WL 740454, *2.