**In re BAUER, Holly J., Debtor.**

**No. 03–21921.**

United States Bankruptcy Court,
D. Idaho.

Feb. 20, 2004.

D. Ray Barker, Moscow, ID, for Debtor.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### INTRODUCTION

Holly Bauer ("Debtor") filed a voluntary petition for chapter 13 relief on December 3, 2003. Doc. No. 1. Her proposed chapter 13 Plan, Doc. No. 8, came on for a confirmation hearing on February 17, 2004. No creditors of Debtor filed objections to confirmation, nor did any appear at the confirmation hearing. The chapter 13 Trustee, C. Barry Zimmerman ("Trustee"), filed a pre-hearing recommendation opposing confirmation for several reasons. Doc. No. 13. The Trustee's arguments at the confirmation hearing focused on his contention that Debtor's plan did not comply with § 1325(b)(1), which provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Debtor disputes the Trustee's disposable income analysis. By this Decision, the Court concludes the Trustee's § 1325(b) objection shall be sustained, though not on the precise basis he urged. Debtor's plan will not be confirmed, but Debtor will be allowed an opportunity to amend. This Decision constitutes the Court's findings and conclusions to the extent required by Rule.

### FACTS

The operative facts are established in two ways. First, Debtor was present at the confirmation hearing and her counsel summarized, in the nature of a proffer, the testimony Debtor would give were she to take the stand. The Trustee raised no objection to this, and he expressly waived the opportunity to examine Debtor under oath. The Court therefore accepts for purposes of this Decision the factual matters as recited at hearing. Second, certain facts are established by the schedules and the statement of financial affairs Debtor signed and filed in this case. *In re Webb*, 03.1 I.B.C.R. 25, 26 (Bankr.D.Idaho 2003) (statements made under penalty of perjury in bankruptcy schedules and statements may be treated as admissions under Fed. R.Evid. 801).

Debtor is a single woman who lives in Moscow, Idaho.[1] She works at Washington State University in Pullman, Washington as a data technician, earning a monthly

---

1. Debtor's petition shows an address of "2990 East Palouse River Drive, No. 304" in Moscow. The nature of her residence is not described. Debtor's schedule B discloses that she owns a 1982 Fleetwood mobile home worth $13,000.00. She claims a homestead exemption in the Fleetwood. *See* schedule C (asserting exemption under Idaho Code § 55–1004). Debtor's schedule G discloses no unexpired leases, but her schedule J discloses a $185.00 per month expense under the category "rent or home mortgage payment (include lot rented for mobile home)." The

Court thus infers that the Fleetwood is located in a space ("No. 304") in a mobile home park in Moscow.

There is a point to this discussion. There are issues in this case concerning Debtor's mother, who lives in a mobile home on a lot in New Mexico. The Court concludes it is not Debtor's Fleetwood that is in New Mexico providing a residence for her mother. Certainly no homestead exemption could be claimed in it under § 55–1004 if that were the case.

net income of $1,736.25. Schedule I. Her monthly expenses total $1,686.01 leaving Debtor with excess income of $50.24 per month. Schedule J. Debtor's chapter 13 Plan thus proposes 36 monthly payments of $50.00.

Debtor owns a one half interest in a "mobile home lot" located in Las Cruces, New Mexico. The other half interest is owned by Debtor's mother. Debtor and her mother are co-obligors to a secured creditor on this mobile home lot. The amount of the secured claim is just slightly in excess of the asserted value of the lot. *See* schedules A, D.

Debtor's agreement to be a co-debtor on the obligation was necessary for the lender to provide financing to her mother. And, since 1994, Debtor has been sending her mother $199.01 per month, which her mother then uses to pay on this secured claim. Debtor's ongoing financial assistance was required since her mother has very limited income (Social Security survivor benefits only) and could not otherwise afford the payments. Debtor has a sister who is unable to contribute financially to the support of their mother.

Debtor's schedule J includes the $199.01 amount as a monthly expense item under the category of "support paid to others." The Trustee objects to the inclusion of this expense in Debtor's calculation of disposable income.[2] Debtor counters that her mother is a dependent, noting that § 1325(b)(2) provides:

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> > (A) for the maintenance or support of the debtor or a dependent of the debtor. . . .

Resolution of this question is necessary before the Plan may be confirmed.[3]

## DISCUSSION AND DISPOSITION

### A. "Maintenance or support of . . . a dependent of the debtor"

■ The Trustee and Debtor come to different conclusions over whether Debtor's mother is a dependent within the contemplation of § 1325(b)(2)(A).

When a term used in the Code is at issue, the first and most obvious source of authority is the language of the Code it-

2. Debtor treats the secured claim on the New Mexico realty "outside" the Plan, and proposes to continue the $199.01 payments. This treatment of a secured claim appears to fall within § 1322(b)(2) ("the plan may . . . leave unaffected the rights of holders of any class of claims"), but that does not eliminate the Trustee's disposable income concerns. Chapter 13 trustees regularly object on § 1325(b) grounds if they believe debtors are dedicating income to service a secured debt on collateral not reasonably necessary for their support.

3. The Trustee's recommendations, Doc. No. 13, identified other confirmation issues. The parties advised the Court at hearing that these had been resolved through negotiation and would be reflected in an agreed order of confirmation.

The Court's independent evaluation of whether confirmation is warranted identified additional disposable income issues, which are addressed further below. And the Court has identified an issue which relates to the confirmation standard in § 1325(a)(4). Debtor's personal property assets as shown on schedule B are for the most part minimal. However, Debtor discloses a "TIAF–CREF account" with a value of $135,000.00. *Id.* This account is claimed fully exempt on schedule C under Idaho Code § 11–604A(3). There is nothing in the record or in the proffer which would indicate that the account qualifies under that statute. However, neither the Trustee nor any creditor has filed an objection to this claim of exemption. *See* Fed. R. Bankr.P. 4003(b) (requiring objection within 30 days after the § 341(a) meeting of creditors, which was here held on January 26, 2004).

self. Unfortunately, the term "dependent" as used in § 1325 is not defined in that section, or within any other provision of chapter 13, or in the Code's general § 101 definitions.[4]

In the absence of a Code definition, the focus turns next to case law. Unfortunately, neither the Trustee nor Debtor has provided the Court with helpful briefing of or citation to the case law.[5]

The Court's research found that bankruptcy courts have used varying approaches, and sometimes reached conflicting results, in evaluating the question. *See, e.g., Meler v. United States Tr. (In re Meler)*, 295 B.R. 625, 630–31 (D.Ariz.2003) (compiling cases). *Meler* notes that "[s]ome courts have determined that a debtor's expenses to support his or her adult children, parents or grandchildren are reasonably considered in calculating the debtor's disposable income" while "[o]ther courts have declined to find individuals, though arguably dependant upon the debtor, to be 'dependents' under the Bankruptcy Code, even in the face of a legal or familial relationship." 295 B.R. at 630.

■ Reviewing the several decisions cited in *Meler* discloses that courts approach the question on a case by case basis, and the ultimate conclusion of whether a particular individual is a dependent of the debtor is a highly factual inquiry. This is consistent with the general proposition that disposable income determinations are to be made by the Court on a case by case basis based on all the relevant circumstances. *Smith v. Spurgeon (In re Smith)*, 207 B.R. 888, 890 (9th Cir. BAP 1996); *In re Lenartz*, 263 B.R. 331, 338, 01.2 I.B.C.R. 79, 81 (Bankr.D.Idaho 2001).

Several cases provide assistance here. In *In re Gonzales*, 297 B.R. 143 (Bankr. D.N.M.2003), the court found that the debtor's plan met § 1325(a) even though support was provided for an adult son residing with debtor. *Id.* at 150–152. It appears, though, that the court (after considering both "extended families" and the so-called "nuclear family")[6] determined that consanguinity alone might not be enough and not every relative was necessarily eligible for dependent status. *Id.* at 151 (addressing the question of where "lines should be drawn" and requiring a "genuine family unit.") It further appears that the facts regarding the nature and duration of the support actually provided to the putative dependent are as much if not more important than the familial relationship. *Id.*

Other courts have also looked for something beyond mere kinship upon which to

4. Dependent is defined in § 522(a)(1). That definition is not helpful here since it is a definition applicable just to § 522, and provides only that "dependent" in that section includes a spouse whether or not that spouse is actually dependent.

5. Debtor filed a brief in which she refers to a 1995 case before this Court, and the Trustee advised in a post-hearing submission that he, too, relied upon this case (*In re Comer*, Case No. 95–03584). Court records show this 1995 case was closed in 1999. While the docket of that case is available, the pleadings therein were not imaged and thus cannot be reviewed. Neither party provided the Court with copies of any of the relevant pleadings or decisions in that matter. While the Court is willing to review and consider unreported decisions, it is incumbent upon litigants to provide that material or insure that it is otherwise available. The Court cannot consider or address *Comer* on the present record.

6. That court characterized a nuclear family as consisting only of father, mother and children, and an extended family as an "immediate family" (*i.e.*, a person's parents, spouse, children and siblings) together with collateral relatives who make up a clan. *Gonzales*, 297 B.R. at 150–51, n. 10, n. 11.

rely. For example, *In re Smith,* 269 B.R. 686 (Bankr.W.D.Mo.2001), observed that a state statute in certain circumstances imposed a parental obligation of support until a child completed a college education or reached the age of 22 years, whichever occurred first. *Id.* at 689 (citing Mo.Rev. Stat. § 452.340(5)).[7] That court also noted that the debtors would be entitled to claim their 20 year old daughter as a dependent on their federal income tax returns under 26 U.S.C. § 152. *Id. Smith* allowed the claimed expenses related to the child to be deducted in an analysis of their overall available income.

A less recent, but still cogent analysis is found in *In re Tracey,* 66 B.R. 63 (Bankr. D.Md.1986). The issue there was whether a 72 year old mother of one of the debtors was a dependent for purpose of § 1325(b)(2)(A). That court also considered 26 U.S.C. § 152(a) and whether the mother qualified as a dependent of the debtors for income tax purposes. It also looked to another federal statutory definition of dependent found in 10 U.S.C. § 1072(2)(E). *Id.* at 66. *Tracey* noted, however, that Congress did not in § 1325 establish the sort of express and detailed conditions for finding dependency as it did in these other statutory definitions. *Id.* at 67. The Court therefore concluded that dependent in § 1325 was to be evaluated based on that term's commonly understood meaning, and it ultimately found the mother "partially dependent" upon the debtor's financial assistance. *Id.*

*In re Rigdon,* 133 B.R. 460 (Bankr. S.D.Ill.1991), agreed that, in the absence of an explicit definition of dependent for use in § 1325(b), the ordinary and common meaning of the term would be applied. *Id.* at 463–65 (following *Tracey,* and *Leslie Womack Real Estate, Inc. v. Dunbar (In re Dunbar),* 99 B.R. 320, 324–25 (Bankr. M.D.La.1989)).[8] *Rigdon* noted that, while the concept of § 1325 dependency was therefore somewhat broader than other U.S.Code definitions, this breadth was consistent with the bankruptcy context in which the question arose.[9]

Based on these authorities, and the undisputed facts presented in this case, the Court will find that the contribution of $199.01 per month by Debtor to her mother to pay toward the co-obligated secured debt on the New Mexico mobile home lot is an amount reasonably expended for the maintenance or support of a dependent under § 1325(b)(2)(A). Debtor's 10 years of providing assistance, the amount of such assistance, the use to which it's put, the mother's financial needs and lack of income, and the lack of other sibling support, all support this finding.

The Court acknowledges Debtor's argument that Idaho Code § 32–1002 establishes a "reciprocal duty of support" be-

7. *Smith,* like some other cases discussed in this Decision, was a § 707(b) case. The court, however, found that a primary factor in determining substantial abuse under § 707(b) was the ability of the debtor to fund a chapter 13 plan and, in making that determination, the court would evaluate disposable income available to fund a hypothetical plan. *Smith,* 269 B.R. at 689. A similar analytic approach is taken to § 707(b) in the Ninth Circuit. *See Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 914 (9th Cir.1988). Disposable income analyses in § 707(b) cases can thus be applied to § 1325(a) inquiries.

8. *Dunbar* defined a dependant as "a person who reasonably relies on the debtor for support and whom the debtor has reason to and does support financially." 99 B.R. at 324.

9. *Rigdon* also concluded, like most of the reported cases, that "a factual finding of dependency will ... have to be made, after a hearing, on a case by case basis." 133 B.R. at 465.

tween parents and children. While the Court believes this a legitimate observation in a § 1325 case, it is not prepared to unequivocally find that it is determinative. Instead, all relevant facts and circumstances must be considered.

■ The finding of dependency would arguably be bolstered had Debtor claimed her mother as a dependent on her income tax returns. Debtor conceded during hearing, however, that she had not done so. She also was quick to argue that this was not, or should not be, a disqualifying fact. The Court agrees. Consistent with *Tracey, Rigdon* and similar cases, the Court concludes that because the restrictive definition in 26 U.S.C. § 152 was not replicated by Congress in § 1325, a debtor's inability to meet the requirements for establishing that a person is a dependant for income tax purposes is not controlling or determinative under § 1325(b)(2)(A).

## B. Other disposable income issues

■ While the Court concluded above that Debtor's subsidy of her mother's housing expense does not contravene § 1325(b) and require denial of confirmation, it nonetheless concludes the Trustee's

disposable income objection is still well taken.[10]

This Court discussed in *In re Cavanaugh*, 175 B.R. 369, 94 I.B.C.R. 219 (Bankr.D.Idaho 1994), the question of "discretionary" spending on items that are not absolute necessities of life. *Id.* at 374. It concluded that whether the amount set aside for all such discretionary, non-essential items is reasonable requires consideration of the debtors' earned income, the amount of payments they will make under the plan, and the extent to which they will pay their general unsecured creditors. *Id.* at 374–75.[11]

Debtor's initially proposed payment to creditors is a relatively small $50.00 per month for the required minimum three years, or $1,800.00 in total.[12] Debtor's Plan will thus provide but a small dividend on the $50,000.00+ of unsecured (and all credit card) debt shown on her schedule F.

Debtor's budget contains items that the Court sees as problematic under all the circumstances of this case. For example, Debtor's schedule J shows an expense of $120.00 per month for "TV cable and Internet service." This appears excessive.[13]

10. While the Trustee has not expressly raised the concerns regarding Debtor's budget which the Court now addresses, and while the Court appropriately gives some deference to the Trustee's review, the objection under § 1325(b) puts the entire budget under review.

11. *Cavanaugh* states that "[t]he reasonableness of proposed discretionary expenses must be evaluated in light of the debtor's income and Chapter 13 plan payments. A high income debtor making substantial payments under the plan may retain a greater dollar amount for discretionary expense than could a debtor of modest income who proposes to make no payments under the plan." *Id.* at 374 (quoting *In re Anderson*, 143 B.R. 719, 721 (Bankr.D.Neb.1992)).

12. The Court is aware that the amount of the monthly payment will increase, tentatively by $39.64 (for a total of $89.64 per month) yielding $3,227.04 over the life of the plan. This increase is needed to account for a voluntary retirement contribution Debtor makes through payroll deduction because under prior decisional law in this District such voluntary contributions must either be terminated for the duration of the plan or compensated for by an increase in plan payments. *In re Estes*, 00.4 I.B.C.R. 187, 188 (Bankr.D.Idaho 2000) (following *Cavanaugh*, 175 B.R. at 369).

13. *Gonzales* recognized that decisions as to the reasonableness of particular budget items requires the Court, as well as the litigants, to make value judgments. 297 B.R. at 149. It cited *In re Gonzales*, 157 B.R. 604, 607–08

An expense for cable TV could certainly be viewed as a luxury rather than a necessity. But even if a modest amount for cable TV could be a part of a debtor's discretionary "recreational" expenses, Debtor's budget contains no room for something of this magnitude.

Similarly, internet services are not necessarily allowable expenses. *See, e.g., In re Downin,* 284 B.R. 909, 913 (Bankr. N.D.Iowa 2002); *Educ. Credit Mgmt. Corp. v. Buchanan,* 276 B.R. 744, 752 (N.D.W.Va.2002); *but see Gerhardt v. Southwest Student Servs. Corp. (In re Gerhardt),* 276 B.R. 424, 430–31 (Bankr. E.D.La.2002) *rev'd on other grounds,* 348 F.3d 89 (5th Cir.2003) (approving internet service because it was necessary for employment). On the other hand, internet access appears to be an increasingly common household expense, and arguably is becoming more of a necessity as employers, retailers, schools, governmental entities and others expect to be contacted primarily if not exclusively over the internet for information or services rather than by phone or mail.

Some expense for these items may be reasonable, but the $120.00 per month for cable and internet here is not explained or justified. Having the opportunity to review countless budgets through the District on a regular basis, the Court is persuaded that the expense shown here is roughly double what is commonly expended for basic cable TV (without expanded or premium channels) and for basic dial-up internet access combined. It is not unreasonable to expect those proceeding through chapter 13 to defer excessive discretionary expenditures until after the case has concluded.[14] And while it may not seem like much, a $60.00 per month addition to Debtor's plan funding here would result in more than a 100% increase in payments to unsecured creditors over what she originally proposed. It will still be a substantial increase over what she suggests will be paid under an amended confirmation order.

Debtor's budget also includes $45.00 per month for "pet expenses." A review of schedule B reflects that Debtor has 17 cats. In essence, Debtor's original Plan suggested that $51,000.00 of unsecured credit card creditors should share the payment of $50.00 per month while a virtually identical amount is spent each month to maintain this clowder. While understandably loath to become too closely involved in the Debtor's lifestyle choices, Debtor invited this type of scrutiny of her budget and her claims that certain expenses are "reasonably necessary for her support" when she sought the benefits of chapter 13 relief and filed a plan with minimal funding, while contributing larger amounts monthly to expenses of these sorts.

## CONCLUSION

For the reasons stated, the Court concludes that the Trustee's specific objection to the inclusion of the $199.01 expense shall be overruled. However, Debtor's

(Bankr.E.D. Mich.1993), which stated that resolving such close questions was "an unpleasant job [but] someone has to do it.... [T]he someone is the bankruptcy judge". 157 B.R. at 607 (quoting *In re Rogers,* 65 B.R. 1018, 1021 (Bankr.E.D.Mich.1986)). *See also In re Keating,* 298 B.R. 104, 109 (Bankr.E.D.Mich. 2003).

14. *See In re McGilberry,* 298 B.R. 258, 260 (Bankr.M.D.Pa.2003) (while there is no "pre-cise formula for calculating disposable income, [the cases] make it clear that modification of a debtor's lifestyle is often the price to be paid for the privilege of obtaining a Chapter 13 discharge"); *see also In re Zuehlke,* 298 B.R. 610 (Bankr.N.D.Iowa 2003) (judicial application of § 1325(b) "allow[s] debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses").

Plan cannot be confirmed under the provisions of § 1325(b) until it has been established that the overall budget and proposed plan payments meet the standards of that section.

Confirmation is therefore denied. A continued confirmation hearing is set for 10:00 a.m. on March 16, 2004 in Moscow, Idaho. Debtor shall file any amendments to her schedules and/or plan within 15 days of the date hereof. A separate order will be entered accordingly.